Bryan L. P. Saalfeld - 243331
    BSaalfeld@mpbf.com
Abraham M. Andrade III - 321264
    AAndrade@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
580 California Street, Suite 1100
San Francisco, California, 94104
Telephone:    (415) 788-1900
Facsimile:    (415) 393-8087

Attorneys for Plaintiffs
DAKAVIA MANAGEMENT CORP.,
MONTE VISTA ESTATES, LLC, and
LAMAR ESTATES, LLC

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## FRESNO DIVISION

| | |
|---|---|
| DAKAVIA MANAGEMENT CORP., an Oregon Corporation; MONTE VISTA ESTATES, LLC, a Colorado Limited Liability Company; and LAMAR ESTATES, LLC, a Colorado Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> BRANDON BIGELOW, an individual; CURTIS BIGELOW, an individual; RICHARD A. GREEN, an individual; RAZMIK ZAKARIAN, an individual; JAMES CHRISTIAN HANSEN, an individual; RODNEY ZWAHLEN, an individual; CHAIM RASKIN, an individual; INVIGORATE HEALTHCARE, INC., a California Corporation; INVIGORATE HEALTHCARE, LLC, a California Limited Liability Company; INVIGORATE HEALTHCARE MANAGEMENT, LLC a California Limited Liability Company; MONTE VISTA CARE HOLDINGS, LLC, a California Limited Liability Company; LAMAR HOLDINGS, LLC, a California Limited Liability Company; LTC MANAGEMENT HOLDINGS, LLC, a California Limited Liability Company; SNF PAYROLL, LLC, a California Limited Liability Company; SNF MANAGEMENT, LLC, a Delaware Limited Liability Company; AND DOES 1-50; <br><br> Defendants. | Case No.: 1:20-cv-00448-NONE-SKO <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> 1.  **BREACH OF WRITTEN CONTRACT;** <br> 2.  **BREACH OF WRITTEN CONTRACT;** <br> 3.  **BREACH OF WRITTEN CONTRACT;** <br> 4.  **BREACH OF WRITTEN CONTRACT;** <br> 5.  **BREACH OF WRITTEN GUARANTY;** <br> 6.  **BREACH OF WRITTEN GUARANTY;** <br> 7.  **ON PROMISSORY NOTE;** <br> 8.  **BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING;** <br> 9.  **FRAUDULENT CONCEALMENT;** <br> 10. **NEGLIGENT MISREPRESENTATION;** <br> 11. **NEGLIGENCE;** <br> 12. **BREACH OF FIDUCIARY DUTY;** <br> 13. **EXPRESS INDEMNITY;** <br> 14. **UNJUST ENRICHMENT;** <br> 15. **ACCOUNTING;** <br> 16. **CONVERSION;** <br> 17. **DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Dakavia Management Corp., an Oregon corporation, Monte Vista Estates, LLC, a Colorado limited liability company, and Lamar Estates, LLC, a Colorado limited liability company, on behalf of themselves and all others similarly situated, hereby file this Second Amended Complaint against Defendants Brandon Bigelow, an individual residing in Tulare County, California; Curtis Bigelow, an individual residing in Tulare County, California; Richard A Green, an individual residing in Tulare County, California; Razmik Zakarian, an individual residing in Fresno County, California; Rodney Zwahlen, an individual residing in Stanislaus, County, California; James Christian Hansen, an individual residing in the state of Utah;  Invigorate Healthcare, Inc., a California corporation; Invigorate Healthcare, LLC, a California limited liability company; Invigorate Healthcare Management, LLC, a California limited liability company; Monte Vista Care Holdings, LLC, a California limited liability company; Lamar Holdings, LLC, a California limited liability company; LTC Management Holdings, LLC, a California limited liability company; SNF Payroll, LLC, a California limited liability company; SNF Management, LLC, a Delaware limited liability company; and Chaim Raskin, an individual residing in Los Angeles County, California.

## I.    <u>INTRODUCTION</u>

1.    This case arises out of Defendants' failure to perform financial operations for two State of Colorado skilled nursing facilities, Monte Vista Estates operated by Monte Vista Estates, LLC and Lamar Estates operated by Lamar Estates, LLC, per written consulting agreements with Plaintiffs. As a result of Defendants' malfeasance, including, but not limited to, the improper commingling of federal funds, failure to honor personal guaranties and promissory notes, fraudulent billing and accounting practices, and the overall dereliction of duties, Plaintiffs have been forced to reassume financial control of Monte Vista Estates, LLC and Lamar Estates, LLC to avoid further penalties and the risk of losing federal and state licensure. As a direct result of Defendants' bad acts, Plaintiffs have incurred damages, including penalties, in excess of $3,000,000.

## II.    <u>JURISDICTION AND VENUE</u>

2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

3.     Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because at least one defendant resides in this judicial district and the majority of defendants are residents of California, and because a substantial part of the events or omissions giving rise to the claims at issue in this Second Amended Complaint arose in this District, and/or a substantial part of the property that is the subject of this action is situated in this District.

### III.     **PARTIES**

4.     Plaintiff Dakavia Management Corporation ("Dakavia") is and at all relevant times was a citizen of Oregon and an Oregon corporation with its principal place of business in Salem, Oregon. Dakavia is owned by Kent M. Emry, a citizen of Oregon.

5.     Plaintiff Monte Vista Estates, LLC, ("Monte Vista Estates, LLC") is and at all relevant times was a citizen of Colorado and a Colorado limited liability company with its principal place of business in Monte Vista, Colorado. Monte Vista Estates, LLC is owned by Kent M. Emry, a citizen of Oregon.

6.     Plaintiff Lamar Estates, LLC, ("Lamar Estates, LLC") is and at all relevant times was a citizen of Colorado and a Colorado limited liability company with its principal place of business in Lamar, Colorado. Lamar Estates, LLC is owned by Kent M. Emry, a citizen of Oregon.

7.     Plaintiffs are informed and believe and thereon allege that Defendant Brandon Bigelow ("Bigelow") is and at all relevant times was a citizen of California and a resident of Tulare County, California. Bigelow was, also, at all times referenced below the Chief Executive Officer of Defendant Invigorate Healthcare, Inc., an officer and manager of Invigorate Healthcare, LLC and Invigorate Healthcare Management, LLC, and the managing member of Defendants Monte Vista Care Holdings, LLC, and Lamar Holdings, LLC. In addition, at all relevant times, Bigelow was, on information and belief, a forty-five percent (45%) owner of Invigorate Healthcare Management, LLC.

8.     Plaintiffs are informed and believe and thereon allege that Defendant Curtis Bigelow ("C. Bigelow") is and at all relevant times was a citizen of California and a resident of Tulare County, California. C. Bigelow was, also, at all times referenced below the Controller and V.P. of Finance for Defendant Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, and Invigorate Healthcare

Management, LLC.

9.    Plaintiffs are informed and believe and thereon allege that Defendant Richard A. Green ("Green") is and at all relevant times was a citizen of California, a resident of Tulare County, California, and the former Secretary and Chief Financial Officer of Defendant Invigorate Healthcare, Inc.

10.    Plaintiffs are informed and believe and thereon allege that Defendant Razmik Zakarian ("Zakarian") is and at all relevant times was a citizen of California, a resident of Fresno County, California, and an officer of Defendant Invigorate Healthcare, Inc.

11.    Plaintiffs are informed and believe and thereon allege that Defendant James Christian Hansen ("Hansen") is and at all relevant times was a citizen of Utah, a resident of Weber County, Utah, and the former Chief Financial Officer of Defendant Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, and Invigorate Healthcare Management, LLC.

12.    Plaintiffs are informed and believe and thereon allege that Defendant Rodney Zwahlen ("Zwahlen") is and at all relevant times was a citizen of California, a resident of Stanislaus County, California, and President of Defendant Invigorate Healthcare Management, LLC. In addition, at all relevant times, Zwahlen was, on information and belief, a 35% owner in Invigorate Healthcare Management, LLC.

13.    Defendant Invigorate Healthcare, Inc. ("Invigorate Healthcare, Inc.") is and at all relevant times was a citizen of California, a suspended California corporation with its principal place of business in Tulare County, California and the manager of Defendant Invigorate Healthcare, LLC. On information and belief, Invigorate Healthcare, Inc. is owned by Bigelow, a citizen of California.

14.    Defendant Invigorate Healthcare, LLC ("Invigorate Healthcare, LLC") is and at all relevant times was a citizen of California and a California limited liability company with its principal place of business in Tulare County, California. On information and belief, Invigorate Healthcare, LLC is owned by Bigelow, a citizen of California.

15.    Defendant Invigorate Healthcare Management, LLC ("Invigorate Healthcare Management, LLC") is and at all relevant times was a citizen of California and a California limited liability company with its principal place of business in Tulare County, California. On information and

belief, Invigorate Healthcare Management, LLC is owned by Bigelow, a citizen of California.

16.    Defendant Monte Vista Care Holdings, LLC ("Monte Vista Care Holdings") is and at all relevant times was a citizen of California and a suspended California limited liability company with its principal place of business in Tulare County, California. On information and belief, Monte Vista Care Holdings is owned by Bigelow, a citizen of California.

17.    Defendant Lamar Holdings, LLC ("Lamar Holdings") is and at all relevant times was a citizen of California and a suspended California limited liability company with its principal place of business in Tulare County, California. On information and belief, Lamar Holdings is owned by Bigelow, a citizen of California.

18.    Defendant LTC Management Holdings, LLC, ("LTC Management") is and at all relevant times was a citizen of California, a suspended California limited liability company with its principal place of business in Los Angeles County, California, and is, on information and belief, a 20% owner in Invigorate Healthcare Management, LLC. LTC Management is managed by its sole member Chaim Raskin, a citizen of California.

19.    Defendant SNF Payroll, LLC ("SNF Payroll") is and at all relevant times was a citizen of California and a California limited liability company with its principal place of business in Shasta County, California. SNF Payroll is managed by its sole member SNF Management, a citizen of Delaware.

20.    Defendant SNF Management, LLC ("SNF Management") is and at all relevant times was a citizen of Delaware and a Delaware limited liability company with its principal place of business in Shasta County, California.  Plaintiffs are informed and believe and thereon allege that Defendant SNF Management is the manager and sole member of SNF Payroll. On information and belief SNF Management is managed and/or owned by a citizen of California.

21.    Plaintiffs are informed and believe and thereon allege that Defendant Chaim Raskin ("Raskin") is and at all relevant times was a citizen of California, a resident of Los Angeles County, California, and the manager and sole member of LTC Management. In addition, at all relevant times, Raskin was, on information and belief, an investor and 20% owner in Invigorate Healthcare

Management, LLC.

22.     The true names and capacities, whether individual, corporate or otherwise of Defendants Does 1 through 50, inclusive, are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the Defendants sued under a fictitious name was at all relevant times doing business in the State of California, and is responsible in some manner for the events and occurrences referred to in this Second Amended Complaint as herein alleged.  When the true names, capacities, and involvements of each said Defendants are ascertained; Plaintiffs will seek leave to amend its Second Amended Complaint accordingly.

## IV.     <u>ALTER EGO ALLEGATIONS</u>

23.     Plaintiffs are informed and believe and thereon allege that at all relevant times, each Defendant, including the fictitiously named Defendants, was the agent or employee of each of the remaining Defendants, and was acting within the scope of such agency or employment.

24.     At all relevant times, as alleged more fully herein, each Defendants Bigelow, C. Bigelow, Green, Zakarian, Hansen, Zwahlen, and Raskin and Does 1-50, acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture. Each of the Defendant's acts alleged herein was done with the permission and consent of each of the other Defendants.

25.     At all times relevant hereto, Defendants  Bigelow, C. Bigelow, Green, Zakarian, Hansen, Zwahlen, and Raskin and Does 1-50 were the alter egos of Defendants Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, LTC Management, SNF Payroll, SNF Management, Monte Vista Care Holdings, and Lamar Holdings and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that Defendant completely controlled, dominated, managed, and operated the other Defendants to suit his convenience.

26.     Specifically, at all times relevant hereto, Defendants Bigelow, C. Bigelow, Green, Zakarian, Hansen, Zwahlen, and Raskin and Does 1-50 (1) controlled the business and affairs of

Defendants Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, LTC Management, SNF Payroll, SNF Management, Monte Vista Care Holdings, and Lamar Holdings, and Does 1-50 including any and all of their affiliates; (2) commingled the funds and assets of the corporate entities, and diverted corporate funds and assets for their own personal and the use of other separate skilled nursing facilities not involving Monte Vista Estates, LLC, nor Lamar Estates, LLC; (3) disregarded legal formalities and failed to maintain arm's length relationships among the corporate entities; (4) inadequately capitalized Defendants Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, LTC Management, SNF Payroll, SNF Management, Monte Vista Care Holdings, and Lamar Holdings, and Does 1-50 and; (5) used the same office or business location and employed the same employees for all the corporate entities; (6) held themselves out as personally liable for the debts of the corporate entities, including personal guaranties; (7) used the corporate entities as a mere shells, instrumentalities or conduits for themselves and/or their individual businesses; (8) used the corporate entities to procure labor, services or merchandise for another person or entities; (9) manipulated the assets and liabilities between the corporate entities so as to concentrate the assets in one and the liabilities in another; (10) used corporate entities to conceal their ownership, management and financial interests and/or personal business activities; and/or (11) used the corporate entities to shield against personal obligations, and in particular the obligations as alleged in this Second Amended Complaint.

27.    At all times relevant thereto, Defendants were not only influenced and governed by Defendant Bigelow, and Does 1-50, but there was such a unity of interest and ownership that the individuality, or separateness has ceased, and that the facts are such that an adherence to the fiction of the separate existence of these entities would, under the particular circumstances, sanction a fraud or promote injustice.

28.    Plaintiffs are informed and believe that at all relevant times mentioned herein, the acts of the business entities involved were performed by an employee, agent, officer, servant and/or representative of Defendants Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, LTC Management, SNF Payroll, SNF Management, Monte Vista Care

Holdings, and Lamar Holdings, and Does 1-50.

## V.    AGENCY ALLEGATIONS

29.    At all times relevant to this Second Amended Complaint, Defendants, and each of them, were acting as the agents, employees, and/or representatives of each other, and were acting within the course and scope of their agency and employment with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Second Amended Complaint.

30.    As members of the conspiracies alleged more fully below, each of the Defendants participated and acted with or in furtherance of said conspiracy, or aided or assisted in carrying out the purposes of the conspiracy, and have performed acts and made statements in furtherance of the conspiracy and other violations of California and federal law.

31.    Each Defendant acted both individually and in alignment with the other Defendants with full knowledge of their respective wrongful conduct. As such, Defendants conspired together, building upon each other's wrongdoing, in order to accomplish the acts outlined in this Second Amended Complaint.

32.    Defendants are individually sued as principals, participants, aiders and abettors, and co-conspirators in the wrongful conduct complained of and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein.

## VI.    FACTUAL ALLEGATIONS

**A.    Plaintiffs' Introduction to Bigelow as an Interested Investor in Monte Vista Estates, LLC and Lamar Estates, LLC**

33.    In or about early 2017, Plaintiffs began listing its skilled nursing facilities, Monte Vista Estates and Lamar Estates for sale.  During the initial sales process, Plaintiffs were introduced to Defendant Brandon Bigelow by their real estate broker.  Bigelow identified himself as an interested buyer of Monte Vista Estates and Lamar Estates with significant experience working in the skilled healthcare facility industry.

34.    In order to facilitate Bigelow's entrance into the skilled nursing industry as an potential owner of Monte Vista Estates, LLC and Lamar Estates, LLC, Plaintiffs and Bigelow entered into negotiations to permit Bigelow, by and through his entity, Defendant Invigorate Healthcare, Inc. to enter into consulting agreements to manage the facilities. The parties' long term goal was for Defendants to purchase all shares and operations from Plaintiffs and to eventually take over full ownership.  As part of the negotiations, Plaintiffs required that Bigelow and his fellow investors in Invigorate Healthcare, Inc., execute personal guaranties as an express condition.  In addition, and to further assist Defendant Bigelow towards his path of eventual ownership, Plaintiffs agreed to loan Defendant Invigorate Healthcare, Inc. and Bigelow $469,655 towards start-up costs, pursuant to a promissory note.

**B.    Monte Vista Estates, LLC's Skilled Nursing Facility Consulting Agreement**

35.    On or about April 1, 2017, Plaintiffs Monte Vista Estates, LLC, Dakavia, and Defendant Invigorate Healthcare Inc. entered into the Skilled Nursing Facility Consulting Agreement for Monte Vista Estates ("Monte Vista Estates' Agreement") [Attached as **Exhibit A**, is a true and correct copy of the Monte Vista Estates' Agreement.].

36.    Under the Monte Vista Estates' Agreement, Monte Vista Estates, LLC was the licensed operator of a 60-bed skilled nursing facility, and located at 2277 East Drive, Monte Vista, Colorado 81144 ("Monte Vista Facility").

37.    Under the Monte Vista Estates' Agreement, Dakavia was responsible for managing the Monte Vista Facility pursuant to the terms of the Management Agreement between Monte Vista Estates and Dakavia.

38.    Under the Monte Vista Estates' Agreement, the operational and financial responsibility for the Monte Vista Facility was transferred to Defendant Invigorate Healthcare Inc. which became the sole and exclusive operations consultant for the Monte Vista Facility.  Defendant Invigorate Healthcare, Inc.'s role as consultant became effective April 1, 2017 and was scheduled to last until March 31, 2019. It was later extended by agreement until June 2019, when it was terminated and assigned back to Plaintiffs.

39.    Under the Monte Vista Estates' Agreement,  Monte Vista Estates, LLC was responsible

for providing to Invigorate Healthcare, Inc. its Medicaid and Medicare provider numbers and any other identifying information which Monte Vista Estates, LLC would use to bill for its services provided to patients at the Monte Vista Facility. Monte Vista Estates, LLC was also ultimately responsible for the daily operational decisions and the care delivered to the residents at the Monte Vista Facility during the term of the contract.

40.     Under the Monte Vista Estates' Agreement, Defendant Invigorate Healthcare Inc. was responsible for, at its sole cost and expense, providing bookkeeping, accounting, and administrative functions, including, but not limited to, (1) preparation and maintenance of business records and financial and other reports; (2) establishment and administration of accounting procedures and controls; (3) financial and business planning; (4) processing and payment of accounts payable; (5) billing, processing and collection of accounts receivable, including the billing and timely completion of any Cost reports and forms that may be required by insurance companies, governmental agencies, or other third-party payors; and providing and processing of all employee record keeping, payroll accounting (including social security and other payroll tax reporting), and benefits for all employees of the Monte Vista Facility.

41.     Under the Monte Vista Estates' Agreement, Defendant Invigorate Healthcare, Inc. was to receive all the profits of Monte Vista Estates, LLC, with an option to eventually purchase full ownership As consideration, Defendant Invigorate Healthcare, Inc. agreed to be responsible for all losses during its time as Consultant, and to indemnify, protect, defend and hold Monte Vista Estates, LLC and Dakavia harmless for all claims, demands, liability, and losses related thereto.

42.     As part of the Monte Vista Estates' Agreement, Defendants Bigelow, Green and Zakarian also signed a Personal Guaranty ("Guaranty"), expressly guaranteeing the performance of each and every covenant and obligation by Invigorate Healthcare, Inc. under the terms of the Monte Vista Estates' Agreement. The covenants and agreements contained in the Monte Vista Estates' Agreement expressly bind and inure to Invigorate Healthcare, Inc., and its respective successors and assigns.

## C.    Lamar Estates, LLC's Skilled Nursing Facility Consulting Agreement

43.     On or around April 1, 2017, Plaintiffs Lamar Estates, LLC, Dakavia, and Defendant

Invigorate Healthcare Inc. also entered into a Skilled Nursing Facility Consulting Agreement for Lamar Estates ("Lamar Estates' Agreement").[Attached as **Exhibit B**, is a true and correct copy of the Lamar Estates' Agreement.]

44.    Under the Lamar Estates' Agreement, Lamar Estates, LLC was the licensed operator of a 60-bed skilled nursing facility, and located at 205 South 10th Street, Lamar, Colorado 81052 ("Lamar Facility").

45.    Under the Lamar Estates' Agreement, Dakavia was responsible for managing the Lamar Facility pursuant to the terms of the Management Agreement between Lamar Estates, LLC and Dakavia.

46.    Under the Lamar Estates' Agreement, the operational and financial responsibility for the Lamar Facility was transferred to Defendant Invigorate Healthcare, Inc. which became the sole and exclusive operations consultant for the Lamar Facility.

47.    Under the Lamar Estates' Agreement, Defendant Invigorate Healthcare, Inc. was to receive all the profits of Lamar Estates, LLC, with an option to eventually purchase full ownership.

48.    The covenants, responsibilities and obligations of Dakavia, and Defendant Invigorate Healthcare, Inc., under the Lamar Estates' Agreement mirror that of the Monte Vista Estates' Agreement, as referenced above, including, but not limited to, Defendant Invigorate Healthcare, Inc.'s express agreement to be responsible for all losses during its time as Consultant, and to indemnify, protect, defend and hold Plaintiffs Lamar Estates, LLC and Dakavia harmless for all claims, demands, liability, and losses related thereto.

49.    As part of the Lamar Estates' Agreement, Defendants Bigelow, Green and Zakarian also signed a Personal Guaranty ("Guaranty"), expressly guaranteeing performance of each and every covenant and obligation by Defendant Invigorate Healthcare, Inc. under the terms of the Lamar Estates' Agreement. The covenants and agreements contained in the Lamar Estates' Agreement expressly bind and inure to Defendant Invigorate Healthcare, Inc., and its respective successors and assigns.

**D.    Notice of Termination from Bank of Oklahoma as to Bank Accounts Managed by Defendants for Monte Vista Estates, LLC and Lamar Estates, LLC. & Plaintiffs' Discovery of Fraud and Concealment by Defendants.**

50.    On or about May 13, 2019, Plaintiffs received written termination notices ("Notices")

from the Bank of Oklahoma regarding deposit and collection accounts held for Monte Vista Estates, LLC and Lamar Estates, LLC. [Attached as **Exhibit C**, are true and correct copies of May 13, 2019 Termination Letters from Bank of Oklahoma.] To this point in time, Plaintiffs had no knowledge of any issues between the Bank of Oklahoma and Monte Vista Estates, LLC and/or Lamar Estates, LLC.

51.     After receiving the Notices, Plaintiffs immediately contacted Defendant Invigorate Healthcare, Inc., and, its representatives Defendant Bigelow and Hansen.  In or about mid May 2019, Bigelow assured Plaintiffs that the issue regarding the Notices would be taken care of and that no adverse effects would befall Monte Vista Estates, LLC nor Lamar Estates, LLC.

52.     Thereafter, on or about June 6, 2019, Bigelow called Plaintiffs and informed them that he and Invigorate Healthcare, Inc., and its related entities were out of money, and could no longer continue operating the facilities as a consultant under the terms of the Monte Vista Estates' Agreement and Lamar Estates' Agreement. Nor would they be able to execute on the purchase, as agreed upon.  Plaintiffs also learned from Defendant Bigelow, that in light of the Bank of Oklahoma's termination of the accounts and relating line of credit, Defendants would not be able to meet its payroll obligations of Monte Vista Estates' Facility and Lamar Facility due on June 10, 2019.

53.     Defendants concealed and withheld additional information from Plaintiffs, including the fact that Bigelow and Defendants were commingling United States Department of Housing and Urban Development funds specified for Monte Vista Estates, LLC and Lamar Estates, LLC, for use in unrelated investments and the payment of unrelated debts in other skilled nursing facilities in violation of federal and state law.

54.     On or about June 7, 2019, Plaintiffs learned for the first time from Chief Financial Officer Joseph Schrage of Defendant SNF Payroll that Invigorate Healthcare, Inc., and related entities, Invigorate Healthcare, LLC, and Invigorate Healthcare Management, LLC, had not been paying payroll taxes for several months as it relates to the Monte Vista Estates' Facility and Lamar Facility, in direct violation of the federal and state law, and in breach of the Monte Vista Estates' Agreement and Lamar Estates' Agreement.  Defendants, including but not limited to, Bigelow, S. Bigelow, Hansen, Zwahlen, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Management, LLC, LTC

Management, SNF Payroll, Raskin, Monte Vista Care Holdings, LLC, and Lamar Holdings, LLC., deliberately concealed and withheld this information from its financial disclosures and cost reports presented to Plaintiffs.  Plaintiffs have subsequently learned that in or about February 2019 Defendants Bigelow, Hansen, and Zwahlen specifically instructed and threatened facility administrators at both Monte Vista and Lamar to not contact Plaintiff Dakavia directly about financial difficulties experienced by both facilities under Defendants management, including tax lien notices.

55.     In light of Defendants' underlying fraud, negligent misrepresentations, and breaches of the Monte Vista Estates' Agreement and Lamar Estates' Agreement, Plaintiffs took immediately actions to terminate Defendant Invigorate Healthcare, Inc.'s role as consultant in order to: (1) avoid termination of the license for each skilled nursing facility, (2) limit and reduce any federal and state penalties, and (3) to ensure that payroll was met for each facility.

**E.     Assignment of Monte Vista Care Holdings, LLC's & Lamar Holdings, LLC's Membership Interest**

56.     On or about June 12, 2019, Defendant Monte Vista Care Holdings, LLC assigned its four thousand (4,000) membership units in Monte Vista Estates, LLC, including any option rights to acquire additional membership units in the entity to Plaintiff Dakavia.  At the same time, Defendant Lamar Holdings, LLC also assigned its four thousand (4,000) membership units in Lamar Estates, LLC including any option rights, to Plaintiff Dakavia.  [Attached as **Exhibit D**, is a true and correct copy of the June 12, 2019 Assignments ("Assignment(s)").]

57.     As part of each Assignment, Dakavia agreed to resume control of financial operations of Monte Vista Estates, LLC and Lamar Holdings, LLC, thereby ending Bigelow and Invigorate Healthcare, Inc.'s role as consultant, in an effort to avoid termination of the licenses to operate a 60-bed skilled nursing facility, and cancellation of certain vendor agreements for each facility.

58.     Since the Assignments, Plaintiffs have endeavored to reestablish financial stability over each skilled nursing facility at Monte Vista Estates and Lamar Estates, however both continue to suffer and will suffer losses and penalties.  In doing so, Plaintiffs have been forced to incur outstanding debts, federal and state tax penalties, unpaid payroll taxes, defend lawsuits, fight collection actions, and suffer

additional costs directly caused by Defendants fraudulent actions and failure to perform their duties.

**F.     Monte Vista Estates, LLC's  Administrative Services Agreement With SNF Payroll**

59.     In or about January 2018, Plaintiff Monte Vista Estates, LLC and Defendant SNF Payroll entered into an Administrative Services Agreement ("Monte Vista Payroll Agreement").

60.     Under the Monte Vista Payroll Agreement, Monte Vista Estates, LLC was responsible for compensating SNF Payroll for its performance of the services in accordance with the terms and conditions set forth in the Monte Vista Payroll Agreement.

61.     In 2018, Plaintiff Monte Vista Estates, LLP paid Defendant SNF Payroll $22,240.16 for its payroll services under the Monte Vista Payroll Agreement.

62.     In 2019, Plaintiff Monte Vista Estates, LLP paid Defendant SNF Payroll $16,244.77 for its payroll services under the Monte Vista Payroll Agreement. Under the Monte Vista Payroll Agreement, SNF Payroll was responsible for performing the services described in Annex A including, but not limited to, (i) processing all paychecks, (ii) making all necessary employer/employee deductions, state and federal tax deposits, and filings as required by law (including 940, 941, DE6, DE7), as well as annual W-2s, Affordable Care Act (ACA) compliance forms and reconciliations, (iii) collecting, reporting and processing payment from Payroll Servicer to applicable federal, state and local authorities of payroll taxes including social security, Medicare and related deductions, (iv) maintaining reporting systems for taxes, (v) submitting quarterly and annual payroll tax reports and returns, (vi) maintaining stock of tax forms, and (vii) responding to payroll tax notices.

63.     SNF was also responsible for (i) handling PTO and payroll timing in accordance with Colorado Labor Laws, (ii) providing timely Payroll Based Journaling, and (iii) complying with Section 6106 of the Affordable Care Act, which requires facilities to electronically submit direct care staffing information (including agency and contract staff) based on payroll and other auditable data.

**G.     Lamar Estates, LLC's  Administrative Services Agreement With SNF Payroll**

64.     In or about 2018, Plaintiff Lamar Estates, LLC and Defendant SNF Payroll entered into an Administrative Services Agreement ("Lamar Payroll Agreement").

65.     Under the Lamar Payroll Agreement, Lamar Estates, LLC was responsible for

compensating SNF Payroll for its performance of the services in accordance with the terms and conditions set forth in the Lamar Payroll Agreement.

66.     In 2018, Plaintiff Lamar Estates, LLP paid Defendant SNF Payroll $20,939.47 for its payroll services under the Lamar Payroll Agreement.

67.     In 2019, Plaintiff Monte Vista Estates, LLP paid Defendant SNF Payroll $15,726.25 for its payroll services under the Monte Vista Payroll Agreement.

68.     Under the Lamar Payroll Agreement, SNF Payroll was responsible for performing the services described in Annex A including, but not limited to, (i) processing all paychecks, (ii) making all necessary employer/employee deductions, state and federal tax deposits, and filings as required by law (including 940, 941, DE6, DE7), as well as annual W-2s, Affordable Care Act (ACA) compliance forms and reconciliations, (iii) collecting, reporting and processing payment from Payroll Servicer to applicable federal, state and local authorities of payroll taxes including social security, Medicare and related deductions, (iv) maintaining reporting systems for taxes, (v) submitting quarterly and annual payroll tax reports and returns, (vi) maintaining stock of tax forms, and (vii) responding to payroll tax notices.

69.     SNF was also responsible for (i) handling PTO and payroll timing in accordance with Colorado Labor Laws, (ii) providing timely Payroll Based Journaling, and (iii) complying with Section 6106 of the Affordable Care Act, which requires facilities to electronically submit direct care staffing information (including agency and contract staff) based on payroll and other auditable data.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Breach of Written Contract: Monte Vista Estates' Agreement)**

**(Against Defendant Invigorate Healthcare, Inc. and Does 1-50)**

70.     Plaintiffs incorporate by reference Paragraphs 1 through 69 of this Second Amended Complaint.

71.     Plaintiffs Dakavia and Monte Vista Estates, LLC entered into a written contract with Defendant Invigorate Healthcare, Inc., whereby Defendants would receive 100 per cent of the profits of

Monte Vista Estates, LLC including, the option to purchase additional shares in Monte Vista Estates, LLC, in exchange for Defendant's agreement to perform work as a consultant of the Monte Vista Estates' skilled nursing facility. [Attached as **Exhibit A**, is a true and correct copy of the Monte Vista Estates' Agreement.]

72.    Defendants materially breached the contract by failing to provide bookkeeping, accounting, and administrative functions for Monte Vista Estates, LLC and the Monte Vista Facility.

73.    Plaintiffs fully performed their portion of the written contract by allowing Defendants to receive the 100% of the profits, and by providing Defendants the option to purchase ownership of Monte Vista Estates, LLC.

74.    As a direct and proximate result of Defendants' misconduct and breach of the written contract, Plaintiffs have been harmed, including, but not limited to, being forced to incur outstanding debts, federal and state penalties, unpaid payroll taxes, defend lawsuits, fight collection actions, and suffer additional costs directly caused by Defendants fraudulent actions and failure to perform their duties. Under the express terms of the Monte Vista Estates' Agreement, Plaintiffs are entitled to recover their attorney's fees and costs in bringing this action.

75.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Breach of Written Contract: Lamar Estates' Agreement)

### (Against Defendant Invigorate Healthcare, Inc. and Does 1-50)

76.    Plaintiffs incorporate by reference Paragraphs 1 through 75 of this Second Amended Complaint.

77.    Plaintiffs Dakavia and Lamar Estates, LLC entered into a written contract with Defendant Invigorate Healthcare, Inc., whereby Defendants would receive 100 per cent of the profits of Lamar Estates, LLC including, the option to purchase additional shares in Lamar Estates, LLC, in exchange for Defendant's agreement to perform work as a consultant of the Lamar Estates' skilled nursing facility. [Attached as **Exhibit B**, is a true and correct copy of the Lamar Estates' Agreement.]

78.     Defendant materially breached the contracts by failing to provide bookkeeping, accounting, and administrative functions for the Lamar Estates, LLC and the Lamar Facility.

79.     Plaintiffs fully performed their portion of the written contract by allowing Defendants to receive the 100% of the profits, and by providing Defendants the option to purchase ownership of Lamar Estates, LLC.

80.     As a direct and proximate result of Defendants' misconduct and breach of the written contract, Plaintiffs have been harmed, including, but not limited to, being forced to incur outstanding debts, federal and state penalties, unpaid payroll taxes, defend lawsuits, fight collection actions, and suffer additional costs directly caused by Defendants fraudulent actions and failure to perform their duties. Under the terms of the express terms of the Lamar Estates' Agreement, Plaintiffs are entitled to recover their attorney's fees and costs in bringing this action

81.     WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION

**(Breach of Written Contract: Monte Vista Payroll Agreement)**

**(Against Defendants SNF Payroll, SNF Management, and Does 1-50)**

82.     Plaintiffs incorporate by reference Paragraphs 1 through 81 of this Second Amended Complaint.

83.     Plaintiffs entered into a written contract with Defendants in or about January 2018, whereby Defendants would provide payroll services and administration.

84.     Defendants materially breached the Monte Vista Payroll Agreement by failing to provide the payroll and administration services described in Annex A to the agreement including, but not limited to, (i) processing all paychecks, (ii) making all necessary employer/employee deductions, state and federal tax deposits, and filings as required by law (including 940, 941, DE6, DE7), as well as annual W-2s, Affordable Care Act (ACA) compliance forms and reconciliations, (iii) collecting, reporting and processing payment from Payroll Servicer to applicable federal, state and local authorities of payroll taxes including social security, Medicare and related deductions, (iv) maintaining reporting systems for

taxes, (v) submitting quarterly and annual payroll tax reports and returns, (vi) maintaining stock of tax forms, and (vii) responding to payroll tax notices.

85.    Plaintiffs fully performed their portion of the written contract by compensating Defendants pursuant to the terms and conditions set forth in the agreement.

86.    As a direct and proximate result of Defendants' misconduct and breach of the written contract, Plaintiffs have been harmed, including, but not limited to, being forced to incur outstanding debts, federal and state penalties, unpaid payroll taxes, defend lawsuits, fight collection actions, and suffer additional costs directly caused by Defendants' fraudulent actions and failure to perform its duties.

87.    WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Breach of Written Contract: Lamar Payroll Agreement)

### (Against Defendants SNF Payroll, SNF Management, and Does 1-50)

88.    Plaintiffs incorporate by reference Paragraphs 1 through 87 of this Second Amended Complaint.

89.    Plaintiffs entered into a written contract with Defendants in or about 2018, whereby Defendants would provide payroll services and administration.

90.    Defendants materially breached the Administrative Agreement by failing to provide payroll and administration services described in Annex A to the agreement including, but not limited to, (i) processing all paychecks, (ii) making all necessary employer/employee deductions, state and federal tax deposits, and filings as required by law (including 940, 941, DE6, DE7), as well as annual W-2s, Affordable Care Act (ACA) compliance forms and reconciliations, (iii) collecting, reporting and processing payment from Payroll Servicer to applicable federal, state and local authorities of payroll taxes including social security, Medicare and related deductions, (iv) maintaining reporting systems for taxes, (v) submitting quarterly and annual payroll tax reports and returns, (vi) maintaining stock of tax forms, and (vii) responding to payroll tax notices.

91.    Plaintiff fully performed its portion of the written contract by compensating Defendants pursuant to the terms and conditions set forth in the agreement.

92.     As a direct and proximate result of Defendants' misconduct and breach of the written contract, Plaintiffs have been harmed, including, but not limited to, being forced to incur outstanding debts, federal and state penalties, unpaid payroll taxes, defend lawsuits, fight collection actions, and suffer additional costs directly caused by Defendants' fraudulent actions and failure to perform their duties.

93.     WHEREFORE, Plaintiffs pray for judgment against Defendants, as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Breach of Written Guaranty- Monte Vista Estates' Agreement)

### (Against Defendants Bigelow, Green and Zakarian and Does 1-50)

94.     Plaintiffs incorporate by reference Paragraphs 1 through 93 of this Second Amended Complaint.

95.     On or about April 1, 2017, Defendants Bigelow, Green and Zakarian executed a Personal Guaranty as part of the Monte Vista Estates' Agreement, expressly guaranteeing the performance of each and every covenant and obligation by Defendant Invigorate Healthcare, Inc. under the terms of the Monte Vista Estates' Agreement. Prior to execution of the Personal Guaranty, Bigelow, Green and Zakarian provided financial information including, but not limited to, the disclosure of sufficient assets to support the underlying transaction.  Plaintiffs reasonably relied upon the financial information provided by Defendants Brandon Bigelow, Green and Zakarian before agreeing to the Monte Vista Estates' Agreement.  The covenants and agreements contained in the Monte Vista Estates' Agreement expressly bind and inure to Defendant Invigorate Healthcare, Inc., and its respective successors and assigns.  [A true and correct copy of the Personal Guaranty "Guaranty" is attached hereto as part of **Exhibit A**, The Monte Vista Estates' Agreement, pg. 10, paragraph 24.]

96.     The Guaranty continues in full force and effect until all indebtedness has been fully and finally paid and satisfied and all other obligations of the Defendants have been performed in full.

97.      Plaintiffs were induced to agree to the Monte Vista Estates' Agreement based on the individual guarantees of Defendants.  Without Defendants' guaranty, Plaintiffs would not have entered into an Agreement with Defendants.

98.    Defendants are indebted to Plaintiffs the principal sum of at least $3,000,000.00, in an amount to be determined at trial, plus interest at the rate of 10% per annum.  Defendants are obligated to pay said debit to Plaintiff according to the terms of the Guaranty, but the Defendant has failed to pay said amount to Plaintiffs.  Prejudgment interest continue to accrue on the unpaid principal at the rate of 10% per annum until paid in full.

99.    To collect the amounts now due and owing to Plaintiffs by the Defendants, Plaintiffs have been required to retain the services of Murphy Pearson Bradley & Feeney, a Professional Corporation, to commence this action to enforce the Guaranty, and will incur attorney's fees and costs in connection therewith in an amount unknown to Plaintiffs. Pursuant to Paragraph 18 of the Guaranty contained in the Monte Vista Estates' Agreement, Plaintiffs are entitled to recover their attorneys' fees from Defendants.

100.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Breach of Written Guaranty- Lamar Estates' Agreement)

### (Against Defendants Bigelow, Green and Zakarian and Does 1-50)

101.    Plaintiffs incorporate by reference Paragraphs 1 through 100 of this Second Amended Complaint.

102.    On or about April 1, 2017, Defendants Bigelow, Green and Zakarian executed a Personal Guaranty as part of the Lamar Estates Agreement, expressly guaranteeing the performance of each and every covenant and obligation by Defendant Invigorate Healthcare, Inc.  [A true and correct copy of the Personal Guaranty is attached hereto as part of **Exhibit B**, The Lamar Estates' Agreement, pg. 10, paragraph 24. Prior to execution of the Personal Guaranty, Bigelow, Green and Zakarian provided financial information including, but not limited to, the disclosure of sufficient assets  to support the underlying transaction.   Plaintiffs reasonably relied upon the financial information provided by Defendants Brandon Bigelow, Green and Zakarian before agreeing to the Lamar Estates' Agreement. The covenants and agreements contained in the Monte Vista Estates' Agreement expressly bind and inure to Defendant Invigorate Healthcare, Inc., and its respective successors and assigns.

103.    The Guaranty continues in full force and effect until all indebtedness has been fully and finally paid and satisfied and all other obligations of the Defendants have been performed in full.

104.    Plaintiffs were induced to agree to the Lamar Estates' Agreement based on the individual guarantees of Defendants.  Without Defendants' Guaranty, Plaintiffs would not have entered into the Lamar Estates' Agreement with Defendants.

105.    Defendants are indebted to Plaintiffs the principal sum of at least $3,000,000.00, in an amount to be determined at trial, plus interest at the rate of 10% per annum.  Defendants are obligated to pay said debit to Plaintiff according to the terms of the Guaranty, but the Defendant has failed to pay said amount to Plaintiffs.  Prejudgment interest continue to accrue on the unpaid principal at the rate of 10% per annum until paid in full.

106.    To collect the amounts now due and owing to Plaintiffs by the Defendants, Plaintiffs have been required to retain the services of Murphy Pearson Bradley & Feeney, a Professional Corporation, to commence this action to enforce the Guaranty, and will incur attorney's fees and costs in connection therewith in an amount unknown to Plaintiffs. Pursuant to Paragraph 18 of the Guaranty contained in the Lamar Estates' Agreement, Plaintiffs are entitled to recover their attorneys' fees from Defendants.

107.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (On Promissory Note)

### (Against Defendants Invigorate Healthcare, Inc., Lamar Holdings, LLC, Monte Vista Care Holdings, LLC, Bigelow, and Does 1-50)

108.    Plaintiffs incorporate by reference Paragraphs 1 through 107 of this Second Amended Complaint.

109.    On or about May 15, 2017, Defendants Invigorate Healthcare, Inc. and guarantors, Lamar Holdings, LLC and Monte Vista Care Holdings, LLC, ("Guarantors") executed a First Amended Promissory Note ("Promissory Note") payable to Lamar Estates, LLC in the amount of $469,655.00. [A true and correct copy of the First Amended Promissory Note is attached hereto as **Exhibit E**, and

incorporated herein by this reference.

110.    Defendants agreed to pay all amounts due under the Promissory Note, together with interest thereon of 10% per annum, with a default interest rate of 15%.

111.    Defendants have failed and refused to pay the remaining amounts due under the Promissory Note of $226,580.70, plus interest at the rate of 10% per annum since April 30, 2017, and default interest of 15% since default on or about May 31, 2017.

112.    According to the terms thereof, $226,580.70, plus interest, is presently due and owing.

113.    The Guarantors unconditionally guarantee the payment and performance of each and every obligation under the Promissory Note. The Promissory Note is secured by Guarantors granting Lamar Estates, LLC a security interest in Guarantor's ownership in Lamar Estates, LLC and Lamar Holdings, LLC.

114.    Pursuant to Section 11 of the Promissory Note, the Promissory Note provides that if a default occurs and legal proceedings are commenced to enforce or collect on the Promissory Note, Plaintiff may pursue any right or remedy to recover the attorney's fees and costs pursuant to the terms of the Promissory Note.

115.    Plaintiffs have been required to retain the services of Murphy Pearson Bradley & Feeney, a Professional Corporation, to commence this action to collect the amounts due them under the Promissory Note, and will incur attorney's fees and costs in connection therewith in an amount now unknown to Plaintiffs.

116.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

**(Against Defendants Invigorate Healthcare, Inc., Bigelow, Green, Zakarian, SNF Payroll, SNF Management, and Does 1-50)**

117.    Plaintiffs incorporate by reference Paragraphs 1 through 116 of this Second Amended Complaint.

118.    Under California law, every contract contains an implied covenant of good faith and fair dealing, which requires the parties to contract and deal with each other in good faith and not act in a manner designed to deprive a party of known or expected benefits of a contract.  The obligations of the covenant extend beyond the formation of the contract and include its performance and enforcement.

119.    All of the Agreements contain an implied covenant of good faith and fair dealing which applied to both Plaintiffs and Defendants.

120.    Defendants unfairly deprived Plaintiffs of the benefits of the bargain between the parties and the right to receive the benefits of the Agreements by its conduct, including its conduct in: (1) knowingly providing inaccurate bookkeeping, accounting, and administrative functions for Monte Vista Estates, LLC at the Monte Vista Facility; (2) knowingly providing inaccurate bookkeeping, accounting, and administrative functions for Lamar Estates, LLC at the Lamar Facility; (3) executing a Personal Guaranty as part of the Monte Vista Estates' Agreement without any intention to abide by such guarantee; (4) executing a Personal Guaranty as part of the Lamar Estates' Agreement without any intention to abide by such guarantee; (5) executing a First Amended Promissory Note on behalf of Lamar Holdings, LLC and Monte Vista Care Holdings, LLC without any intention to satisfy such promissory note; (6) knowingly providing inadequate payroll and administration services for Monte Vista Estates, LLC; and (7) knowingly providing inadequate payroll and administration for Lamar Estates, LLC.

121.    As a direct and proximate result of Defendants' breaches of the Agreements, Plaintiffs have suffered and continue to suffer damages in an amount to be determined at trial, as well as attorneys' fees and costs.

122.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### NINTH CAUSE OF ACTION

**(Fraudulent Concealment)**

**(Against Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care**

**Holdings, Lamar Holdings, LTC Management, SNF Payroll, SNF Management, and Does 1-50)**

123.    Plaintiffs incorporate by reference Paragraphs 1 through 122 of this Second Amended Complaint.

124.    Defendants made misrepresentations of material fact when they represented that they were providing bookkeeping, accounting, and administrative functions for the Monte Vista Facility and Lamar Facility. However, unbeknownst to Plaintiffs, Defendants commingled United States Department of Housing and Urban Development funds specified for Monte Vista Estates, LLC and Lamar Estates, LLC, for use and investment in other skilled nursing facilities in violation of federal and state law.

125.    In addition, Defendants, including, but not limited to, Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Management, and SNF Payroll intentionally misrepresented and falsified monthly financial documents from Plaintiffs, including balance sheets, profits and loss statements, costs reports, failed to pay payroll taxes starting in the Second Quarter of 2018 through June 2019, and failed to comply with federal and state payroll laws, including payroll based journaling as required under the Section 6106 of the Affordable Care Act.

126.    Specifically, Defendants, including Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Management, and SNF Payroll, prepared and presented false and misleading balance sheets and profit and loss statements to Plaintiffs in 2018-2019 that understated Lamar Estates, LLC's losses by $209,926.19 and Monte Vista Estates, LLC's losses by $140,925.14. In addition, as Plaintiffs have subsequently learned, Defendants Bigelow, Hansen, and Zwahlen specifically instructed and threatened facility administrators at both Monte Vista and Lamar in or about February 2019 to not contact Plaintiff Dakavia directly about financial difficulties experienced by both facilities under Defendants' management.

127.    Defendants had no reasonable grounds for believing that representation to be true, as they alone knew their services did not meet the standards required. Defendants knew or should have known that its services were not adequate.

128.    Defendants, as alleged above, made the false representations with intent to induce Plaintiffs' reliance on the misrepresented facts, by convincing Plaintiffs that they were providing adequate services bookkeeping, accounting, and administrative functions under the Monte Vista Estates' Agreement and Lamar Estates' Agreements. On multiple occasions, plaintiffs sought clarification from Defendants, including, but not limited to, requests for evidence of backup, support documents and bank reconciliations, all of which were ignored by Defendants.

129.    Because only Defendants knew exactly what type of services they were providing, Plaintiffs were ignorant of the truth regarding and justifiably relied on Defendants' misrepresentations.

130.    As a result of Defendants' fraudulent concealment, Plaintiffs have suffered actual damages in an amount to be determined at trial. In addition to actual damages, an award of punitive damages is proper.

131.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### TENTH CAUSE OF ACTION

### (Negligent Misrepresentation)

**(Against Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, SNF Management, and Does 1-50)**

132.    Plaintiffs incorporate by reference Paragraphs 1 through 131 of this Second Amended Complaint.

133.    Defendants made negligent misrepresentations of material fact when they represented that they were providing bookkeeping, accounting, and administrative functions for the Monte Vista Facility and Lamar Facility.  However, unbeknownst to Plaintiffs, Defendants negligently commingled United States Department of Housing and Urban Development funds specified for Monte Vista Estates, LLC and Lamar Estates, LLC, with accounts held for other skilled nursing facilities being run by Defendants.

134.    In addition, Defendants including, but not limited to, Bigelow, C. Bigelow, Hansen,

Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, and SNF Management, negligently misrepresented and/or prepared financial documents for Plaintiffs, including balance sheets, profits and loss statements, costs reports, failed to pay payroll taxes starting in the Second Quarter of 2018 through June 2019, and failed to comply with federal and state payroll laws.

135.    Specifically, Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, and SNF Management negligently prepared and presented misleading and erroneous balance sheets and profit and loss statements to Plaintiff Dakavia in 2018-2019 that understated Lamar Estates, LLC's losses by $209,926.19 and Monte Vista Estates, LLC's losses by $140,925.14.

136.    Defendants had no reasonable grounds for believing that representation to be true, as they alone knew their services did not meet the standards required.  Defendants knew or should have known that its services were not adequate.

137.    Defendants, as alleged above, negligently made the representations and Plaintiffs reasonably relied on the belief Defendants were providing adequate services bookkeeping, accounting, and administrative functions under the contracts.

138.    Because only Defendants knew exactly what type of services they were providing, Plaintiffs were ignorant of the truth regarding and justifiably relied on Defendants' negligent misrepresentations.  On multiple occasions, plaintiffs sought clarification from Defendants, including, but not limited to, requests for evidence of backup, support documents and bank reconciliations, all of which were ignored by Defendants.

139.    As a result of Defendants' negligent misrepresentation, Plaintiffs have suffered actual damages in an amount to be determined at trial.

140.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION

### (Negligence)

### (Against Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, SNF Management, and Does 1-50)

141.    Plaintiffs incorporate by reference Paragraphs 1 through 140 of this Second Amended Complaint.

142.    Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, and SNF Management, owed a duty to Plaintiffs in providing bookkeeping, accounting, and administrative functions for the Monte Vista Estates, LLC and Lamar Estates, LLC and the Monte Vista Facility and Lamar Facility.

143.    Defendants breached their duty by failing to implement and/or follow appropriate procedures in the performance of their duties for Monte Vista Estates, LLC and Lamar Estates, LLC, and providing inaccurate and erroneous balance sheets, financial statements, profit and loss statements, accounting standards, billings, cost reporting, failing to pay payroll taxes, and failing comply with federal and state payroll laws.

144.    As a result of Defendants' conduct, Plaintiffs have incurred costs and likely will incur additional costs related to this action and to investigate and address the malfeasance as a result of Defendants' negligent acts and/or omissions.

145.    As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs have suffered actual damages, in an amount to be determined at the time of trial.

146.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## TWELFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### (Against Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc.,

**Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, SNF Management, and Does 1-50)**

147.    Plaintiffs incorporate by reference Paragraphs 1 through 146 of this Second Amended Complaint.

148.    Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, and SNF Management owed Plaintiffs fiduciary obligations in performing bookkeeping, accounting, and administrative functions for Monte Vista Estates, LLC and Lamar Estates, LLC and the Monte Vista Facility and Lamar Facility, including, but not limited to access to banking, medical records, financial and credit account information.  By reason of their fiduciary relationship, Defendants owed Plaintiffs the highest obligation of good faith, fair dealing, loyalty, and due care.

149.    Defendants violated and breached these fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith, and supervision by providing inaccurate and erroneous financial statements, profit and loss statements, accounting standards, billings, cost reporting, failing to pay payroll taxes, and failing to comply with federal and state payroll laws.  These actions were not a good faith exercise of loyalty, due care, or prudent business judgment to protect and promote Plaintiffs' investment interests.

150.    In particular, Raskin's involvement with SNF Payroll and as an investor and member of LTC Management, while concurrently being a 20% owner of Invigorate Healthcare Management, LLC, was a clear conflict of interest that led to a breach of fiduciary duty.  The commingling of duties and responsibilities of SNF Payroll to provide accurate bookkeeping and accounting functions for Monte Vista Estates LLC and Lamar Estates, LLC was in clear conflict with the management of funding, capital and investments held by Raskin's other entities as an interested owner and investor in Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, LTC Management, and SNF Payroll.

151.    As a result of Defendants' conduct, Plaintiffs have incurred costs and likely will incur

additional costs related to this action and to investigate and address the malfeasance as a result of Defendants' negligent acts and/or omissions.

152. As a direct and proximate result of the acts and/or omissions of Defendants, Plaintiffs have suffered actual damages, in an amount to be determined at the time of trial.

153. WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## THIRTEENTH CAUSE OF ACTION

### (Express Indemnity)

**(Against Defendants Bigelow, C. Bigelow, Green, Zakarian, Hansen, Zwahlen, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, and Does 1-50)**

154. Plaintiffs incorporate by reference Paragraphs 1 through 153 of this Second Amended Complaint.

155. Plaintiffs deny that it has any responsibility or liability arising from acts of Defendants in mismanaging the operation of Monte Vista Estates, LLC and Lamar Estates, LLC. However, if there is any liability resting with Plaintiffs, then its liability is only passive and secondary and is the result of the active and primary acts, omissions, and fault of Defendants, and each of them, as set forth above.

156. Under the express terms of the Monte Vista Estates' Agreement and Lamar Estates' Agreement, Defendants agreed to be responsible for all losses, and to indemnify, protect, defend and hold Plaintiffs harmless for all claims, demands, liability, and losses related thereto.

157. Plaintiffs intend this Second Amended Complaint to be notification to Defendants that Plaintiff hereby tenders to Defendants the obligation of Defendants to defend Plaintiffs, pursuant to California Code of Civil Procedure Section 1021.6, in that as a result of the torts of Defendants and each of them, Plaintiffs has been required to defend against any allegations in Plaintiffs' Second Amended Complaint. Plaintiffs are informed and believes and thereon alleges that, in light of the allegations of the pleadings to date herein, it would be futile for Plaintiffs to have tendered defense to each of said Defendants prior to filing to this Complainant.

158.    Plaintiffs have incurred, and will continue to incur, liabilities for attorneys' fees and costs in the defense thereof, and in the prosecution of this Plaintiffs, and presently unascertained sums, all according to proof at trial.  Therefore, Plaintiffs are entitled to recover from Defendants, and each of them, all reasonable attorneys' fees and costs incurred in defending against any claims in prosecuting this Second Amended Complaint, as a result of the aforementioned right of indemnification and based upon the tort of another doctrine.

159.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## FOURTEENTH CAUSE OF ACTION

### (Unjust Enrichment)

**(Against Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, and Does 1-50)**

160.    Plaintiffs incorporate by reference Paragraphs 1 through 159 of this Second Amended Complaint.

161.    As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiffs through the payment in exchange for services to financially operate the Monte Vista Facility and the Lamar Facility per consulting agreements.

162.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from the Plaintiff, in light of the fact that the services they received were not what Defendants represented them to be.  Thus, it would be unjust and equitable for Defendants to retain the benefit without restitution to the Plaintiffs for benefits received by Defendants.

163.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**FIFTEENTH CAUSE OF ACTION**

**(Accounting)**

**(Against Defendants Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, SNF Payroll, SNF Management and Does 1-50)**

164.    Plaintiffs incorporate by reference Paragraphs 1 through 163 of this Second Amended Complaint.

165.    Plaintiffs demand from Defendants an accounting and return of all funds taken by Defendants.

166.    Defendants are obligated, and Plaintiffs are entitled to an accounting and return of all funds which were wrongfully and unlawfully taken by Defendants, for principal and interest from April 2017 until the present.

167.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**SIXTEENTH CAUSE OF ACTION**

**(Conversion)**

**(Against Defendants Bigelow, C. Bigelow, Hansen, Zwahlen, Raskin, Invigorate Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare Management, LLC, Monte Vista Care Holdings, Lamar Holdings, LTC Management, SNF Payroll, SNF Management and Does 1-50)**

168.    Plaintiffs incorporate by reference Paragraphs 1 through 167 of this Second Amended Complaint.

169.    Upon information and belief, Plaintiffs allege that Defendants unlawfully obtained possession of United States Department of Housing and Urban Development funds specified for Monte Vista Estates, LLC and Lamar Estates, LLC, and other monies owed to Plaintiffs, and unlawfully commingled the funds with other accounts held and operated by Defendants for other skilled nursing facilities in violation of federal and state law.

170.    Defendants did so without consent or authority of Plaintiffs, and fraudulently caused the

release of federal and state funding, and other amounts, for use in Defendants' separate skilled nursing facilities.

171.    The said transfer and commingling of funds was done without the consent of Plaintiffs and for Defendants own benefit and purposes. Control and possession of the said property was intentionally and unlawfully seized.

172.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**SEVENTEENTH CAUSE OF ACTION**

**(Declaratory Relief)**

**(Against all Defendants)**

173.    Plaintiffs incorporate by reference Paragraphs 1 through 172 of this Second Amended Complaint.

174.    A dispute has arisen and an actual controversy now exists between Plaintiffs and Defendants concerning the respective rights, duties and obligations under the above-referenced agreements, including but not limited to the Monte Vista Estates' Agreement and Lamar Estates' Agreement, and of Defendants agreement to indemnify Plaintiff or to provide contribution in regard to a verdict or judgment, if any, rendered in this Action.

175.    Plaintiffs contend that, in the event the acts and omissions of Defendants are determined to have been a proximate cause of the damages, if any, sustained by the Plaintiffs, then Plaintiffs are entitled to indemnity and contribution and/or contributions from Defendants.

176.    Plaintiffs desire adjudication determination of the respective rights and duties of Plaintiffs and Defendants with respect to the damages claimed in the Action.

177.    WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For recovery under the First through Second Causes of Action for Breach of Written

Agreement against Defendants of all damages resulting from Defendants' breach of the Monte Vista Estates' Agreement and Lamar Estates' Agreement, in an amount to be determined at trial, of at least $3,000,000, plus interest at the rate of 10% per annum.

2.    For recovery under the Third through Fourth Causes of action of all damages resulting from Defendants' breach of the written agreement for the Monte Vista Payroll Agreement and Lamar Payroll Agreement, in an amount to be determined at trial.

3.    For recovery under the Fifth through Sixth Causes of Action for Breach of a Written Guaranty against Defendants of all damages resulting from Defendants' breach of the written guaranties that are contained in the Monte Vista Estates' Agreement and Lamar Estates' Agreement, plus interest at the rate of 10% per annum.

4.    For recovery under the Seventh Cause of Action for Promissory Note against Defendants in the amount of $226,580.70, plus interest at the rate of 10% per annum since April 30, 2017, and default interest of 15% since default on or about May 31, 2017.

5.    For recovery under the Eighth Cause of Action against Defendants for Breach of the Implied Covenant of Good Faith & Fair Dealing.

6.    For recovery under the Ninth through Twelfth Causes of Action for Fraud: Concealment, Negligent Misrepresentation, Negligence, and Breach of Fiduciary Duty against Defendants according to proof, including punitive damages.

7.    For a declaration from this Court determining that Plaintiffs are entitled to reimbursement by way of indemnification from Defendants under the Thirteenth Cause of Action.

8.    For recovery under the Fourteenth and Sixteenth Causes of Action for Unjust Enrichment, and Conversion against Defendants.

9.    For an accounting under the Fifteenth Cause of Action.

10.    For declaratory relief under the Seventeenth Cause of Action establishing Defendants' liability.

11.    Prejudgment interest on all sums expended in an amount to be determined at the time of trial;

12.    Post-judgment interest at the rate allowed by law;

13.    That as to all Defendants, Plaintiffs be awarded their costs, expenses, and attorneys' fees incurred herein;

14.    For such other and further relief as the Court deems just and proper.


DATED:  September 1, 2021

MURPHY, PEARSON, BRADLEY & FEENEY


By _____
Bryan L. Saalfeld
Abraham M. Andrade III
Attorneys for Plaintiffs
DAKAVIA MANAGEMENT CORP.;
MONTE VISTA ESTATES, LLC; and
LAMAR ESTATES, LLC

AMA.4032685.docx