1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAKAVIA MANAGEMENT CORP., et          No.  1:20-cv-00448-NONE-SKO
     al.,
12
                       Plaintiffs,
13                                          ORDER GRANTING IN PART AND
          v.                                DENYING IN PART MOTION TO DISMISS
14                                          AND DENYING MOTION FOR SANCTIONS
     CURTIS BIGELOW, et al.,
15                                          (Doc. Nos. 41, 57)
                       Defendants.
16

17

18          This action relates to two nursing home facilities:  Monte Vista Estates and Lamar Estates

19   ("Facilities").  Plaintiff Dakavia Management Corp. ("Dakavia") owns plaintiffs Monte Vista

20   Estates, LLC and Lamar Estates, LLC ("Facility Entities"), which operate the Facilities.  The case

21   currently proceeds on plaintiffs' second amended complaint ("SAC") filed on September 1, 2021.

22   (Doc. No. 68.)[1]  The SAC alleges California-law contract and tort claims against various

23   defendants in connection with a failed business transaction.  Defendants LTC Management

24   Holdings, LLC ("LTC"), SNF Payroll, LLC ("SNF Payroll"), SNF Management, LLC ("SNF

25   Management") and Chaim Raskin ("Raskin" and cumulatively "SNF Defendants") filed a motion

26   _____

27   [1]  Plaintiffs filed the SAC in response to the court's order to show cause why the matter should
     not be dismissed due to lack of subject-matter jurisdiction.  (Doc. No. 67.)  Because the
28   substantive allegations are the same, the court will apply the pending motions, which were
     directed toward the FAC, to the SAC.

                                                   1

1  to dismiss on July 10, 2020.  (Doc. No. 41.)  SNF Defendants, other than SNF Payroll

2  ("Sanctions Defendants"), filed a motion for sanctions on August 5, 2020.  (Doc. No. 57.)

3  Plaintiffs filed oppositions to the motions on August 20, 2020 (Doc. Nos. 58 & 59), to which SNF

4  Defendants filed replies on August 27, 2020 (Doc. Nos. 60 & 61).  For the following reasons, the

5  motion dismiss will be granted in part and denied in part and the motion for sanctions will be

6  denied.[2]

7                                    **BACKGROUND**

8          In relevant part, the SAC alleges as follows.  Initially, Dakavia managed the Facilities

9  pursuant to management agreements with the Facility Entities.  (SAC, Ex. A at Recital B, and Ex.

10  B at Recital B.)  Dakavia wished to sell its stake, so in April 2017 it entered into consulting

11  agreements ("Consulting Agreements") with defendant Invigorate Healthcare, Inc. ("Invigorate

12  Healthcare"), which was run by its CEO Brandon Bigelow, who was previously a defendant in

13  this action (Doc. No. 72 (notice of voluntary dismissal)).  Under the Consulting Agreements,

14  Invigorate Healthcare assumed operational control of the Facilities.  Invigorate Healthcare's

15  obligations included billing, accounting, and running the Facilities.  The long-term goal was for

16  defendants to purchase the Facilities in full, and Invigorate Healthcare retained options for doing

17  so.  Plaintiffs loaned Bigelow $469,655 for start-up costs, and Bigelow and other fellow investors

18  executed personal guarantees.

19          Each Facility Entity entered into an administrative services agreement with SNF Payroll

20  in 2018 ("Payroll Agreements").  Under the Payroll Agreements, which are not attached as

21  exhibits to plaintiffs' SAC, SNF Payroll was paid for various payroll activities and accounting.

22  /////

23  _____

24  [2]  The undersigned apologizes for the excessive delay in the issuance of this order.  This court's
    overwhelming caseload has been well publicized and the long-standing lack of judicial resources

25  in this district long-ago reached crisis proportion.  That situation, which continued unabated for
    over twenty-two months but has now been partially addressed by the U.S. Senate's confirmation

26  of a new district judge for this court on  December 17, 2021, left the undersigned presiding over
    1,300 civil cases and criminal matters involving 735 defendants at last count.  Unfortunately, that

27  situation sometimes results in the court not being able to issue orders in submitted civil matters
    within an acceptable period of time.  This situation has been frustrating to the court, which fully

28  realizes how incredibly frustrating it has been to the parties and their counsel.

In May 2019, plaintiffs received written termination notices from a bank regarding the accounts for the Facility Entities.  Plaintiffs contacted Invigorate Healthcare, Bigelow and defendant James Christian Hansen.  Bigelow assured plaintiffs that the issue concerning the notices would be taken care of and there would be no adverse effects.  However, on June 6, 2019, Bigelow informed plaintiffs that Invigorate Healthcare and its affiliates were out of money, could no longer operate or purchase the Facilities, and would not be able to meet their payroll obligations.  Defendants allegedly had concealed and withheld information from plaintiffs, including that Bigelow and defendants were commingling federal funds specified for the Facility Entities for unrelated matters in violation of federal and state law.

SNF Payroll's chief financial officer informed plaintiffs that SNF Payroll had not been paying payroll taxes for several months with respect to the Facilities, in violation of federal and state law and in breach of the Consulting Agreements.  Defendants, including three of the SNF Defendants (LTC, SNF Payroll and Raskin), deliberately concealed this information from financial disclosures and cost reports presented to plaintiffs.  In light of these activities, plaintiffs took immediate actions to terminate Invigorate Healthcare's role under the Consulting Agreements.  Certain defendants had obtained equity interests in the Facility Entities, and those interests were transferred to Dakavia.  Plaintiffs have since incurred losses after resuming control as a result of defendants' fraudulent actions and failure to perform duties, including through unpaid payroll taxes.

## LEGAL STANDARDS

### A.    Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows

3

1    the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court accepts as true the allegations in the

3    complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v.*

4    *King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.

5    1989).  However, the court will not assume the truth of legal conclusions cast in the form of

6    factual allegations.  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

7    1986).  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for

8    all purposes."  Fed. R. Civ. P. 10(c).  While Federal Rule of Civil Procedure 8(a) does not require

9    detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported

10   by mere conclusory statements, do not suffice" to survive dismissal under Rule 12(b)(6).  *Iqbal*,

11   556 U.S. at 676.  A complaint must do more than allege mere "labels and conclusions" or "a

12   formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

13   **B.      Leave to Amend**

14          When, as here, more than 21 days after service of a responsive pleading or motion under

15   Rule 12(b), "a party may amend its pleading only with the opposing party's written consent or the

16   court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P.

17   15(a)(2).  Although "Rule 15(a) is very liberal and leave to amend shall be freely given when

18   justice so requires . . . a district court need not grant leave to amend where the amendment:

19   (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in

20   litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th

21   Cir. 2006) (internal quotation marks and citations omitted).  Repeated failures to cure deficiencies

22   by amendment can also justify withholding leave to amend.  *See Sonoma Cty. Ass'n of Retired*

23   *Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).

24          "[I]t is the consideration of prejudice to the opposing party that carries the greatest

25   weight"—prejudice being the "touchstone of the inquiry under Rule 15(a)"—but the opposing

26   party bears the burden of demonstrating prejudice.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316

27   F.3d 1048, 1052 (9th Cir. 2003) (internal quotation marks and citations omitted).  "Leave to

28   amend may [also] be denied if the proposed amendment is futile or would be subject to

1   dismissal," *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (citation

2   omitted), but only if there are "no set of facts [that] can be proved under the amendment to the

3   pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster*

4   *v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quotation marks and citation omitted). "Absent

5   prejudice, or a strong showing of any of the remaining [ ] factors, there exists a *presumption*

6   under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

7   **C.    Motion for Sanctions**

8       In relevant part, Rule 11 of the Federal Rules of Civil Procedure provides:

9           **(b) Representations to the Court.** By presenting to the court a
            pleading, written motion, or other paper—whether by signing, filing,
10          submitting, or later advocating it—an attorney or unrepresented party
            certifies that to the best of the person's knowledge, information, and
11          belief, formed after an inquiry reasonable under the circumstances:

12              **(1)** it is not being presented for any improper purpose, such
                as to harass, cause unnecessary delay, or needlessly increase
13              the cost of litigation;

14              **(2)** the claims, defenses, and other legal contentions are
                warranted by existing law or by a nonfrivolous argument for
15              extending, modifying, or reversing existing law or for
                establishing new law;

16                          * * *

17          **(c) Sanctions.**

18              **(1) In General.** If, after notice and a reasonable opportunity
19              to respond, the court determines that Rule 11(b) has been
                violated, the court may impose an appropriate sanction on
20              any attorney, law firm, or party that violated the rule or is
                responsible for the violation.
21

22  Fed. R. Civ. P. 11.

23      "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *In re*

24  *Keegan Management Co., Securities Litigation*, 78 F.3d 431, 437 (9th Cir. 1996) (*quoting*

25  *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)). "[T]he

26  central purpose of Rule 11 is to deter baseless filings in district court and . . . streamline the

27  administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S.

28  384, 393 (1990).

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted). Determining what constitutes a "reasonable" inquiry is an objective standard. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 892 F.2d 802, 812 (9th Cir. 1989), *aff'd*, 498 U.S. 533 (1991). "[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Fed. R. Civ. P. 11, Advisory Committee's Note (1993). A nonfrivolous complaint cannot be filed for an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell*, 496 U.S. at 399–405).

## ANALYSIS

**A.      Motion to Dismiss**

1.  General Federal Pleading Standards

The SNF defendants argue that plaintiffs' SAC fails to comply with federal pleading standards because the allegations against them "are nothing but boilerplate and insufficient at that." (Doc. No. 41 at 14.) Because the SNF defendants cite the decisions in *Twombly* and *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), the court interprets this argument as invoking Rule 8(a). In *Starr*, the Ninth Circuit held that all complaints are held to at least the following pleading standards:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* Although they must be supported by factual allegations, "legal conclusions can provide the

1  complaint's framework," *Iqbal*, 556 U.S. at 664.

2          Some of plaintiffs' allegations are recitations of the elements of alter ego liability.  For

3  instance, plaintiffs borrow heavily from the legal standards for alter ego liability in the following

4  allegation:

5                  At all times relevant thereto, Defendants were not only influenced
                   and governed by Defendant Bigelow, and Does 1-50, but there was
6                  such a unity of interest and ownership that the individuality, or
                   separateness has ceased, and that the facts are such that *an adherence*
7                  *to the fiction of the separate existence of these entities would, under*
                   *the particular circumstances, sanction a fraud or promote injustice*.
8

9  (SAC ¶ 27 (emphasis added)); *see also Kao v. Holiday*, 58 Cal. App. 5th 199, 205 (2020) (second

10  factor for alter-ego liability is "whether adherence to the fiction of separate existence would,

11  under the circumstances, promote fraud or injustice").  To the extent plaintiffs have alleged only

12  legal conclusions in their SAC, the court will interpret those allegations as merely providing the

13  framework for plaintiffs' claims.

14          However, other allegations go beyond mere recitations.  Also relevant to alter-ego liability

15  is the existence of "such unity of interest and ownership that the separate personalities of the

16  corporation and the individual no longer exist[.]"  *Kao*, 58 Cal. App. 5th at 205.  Plaintiffs

17  provide detailed allegations about who owns what membership stake in various defendants.

18  (SAC ¶¶ 7, 12–21.)  Although these allegations are insufficient as a matter of law upon which to

19  find alter ego liability, *see infra*, they are specific enough that the court will not dismiss the

20  complaint merely for failing to comply with pleading standards.  The SNF defendants' remaining

21  arguments regarding pleading standards are more properly treated as arguments that plaintiffs

22  failed to state a claim against them under alter ego or agency liability.  (Doc. No. 41 at 13–14.)

23  The court addresses each in turn below.

24                  a.    *Alter Ego Liability*

25          The SNF defendants argue that plaintiff's allegations concerning agency and alter ego

26  were too "generic" and "boilerplate" to confer any liability therefrom.  (Doc. No. 41 at 14–15.)

27  "[A]lter ego liability depends on both:  (1) such unity of interest and ownership that the separate

28  personalities of the corporation and the individual no longer exist, and (2) whether adherence to

7

1   the fiction of separate existence would, under the circumstances, promote fraud or injustice."

2   *Kao*, 58 Cal. App. 5th at 205 (internal quotation marks and citations omitted).  With respect to the

3   first element, a unity of interest and ownership, California courts consider a long, non-exhaustive

4   list of factors, none of which are determinative.  *Greenspan v. LADT, LLC*, 191 Cal. App. 4th

5   486, 512–13 (2010).  "[T]he pleading of at least two [of those] factors in support of a unity of

6   interest satisfies this element."  *Daewoo Elecs. Am. Inc. v. Opta Corp.*, No. C 13-1247 JSW, 2013

7   WL 3877596, at *5 (N.D. Cal. July 25, 2013); *accord Pac. Mar. Freight, Inc. v. Foster*, No. 10-

8   CV-0578-BTM-BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (similar).

9        Although the pleading requirements for alter-ego liability are "not so strict," *Unichappell*

10   *Music, Inc. v. Modrock Prod., LLC*, CV 14-02382 DDP PLA, 2015 WL 546059, at *4 (C.D. Cal.

11   Feb. 10, 2015) (noting "the most damning evidence of the 'unity of interest and identity' is often

12   in the hands of the corporation and its principals and can be found nowhere else"), a plaintiff

13   must allege more than legal conclusions.  In *Unichappell*, the district court found that the plaintiff

14   had failed to allege facts sufficient to match its legal conclusions:

15   
16           It is not enough to say, for example, that "W/S is the mere shell, instrumentality, and conduit through which Winogradsky carried and carries on his own business and transactions."  That is the legal conclusion that Modrock wishes the Court to reach.  That conclusion must be buttressed by some allegation of a particular event, pattern of behavior, mode of control, or other fact showing that WS is a mere shell.
17   
18   

19   *Id.* at *5 (citation omitted); *see also Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101,

20   1116 (C.D. Cal. 2003) ("Conclusory allegations of alter ego status are insufficient to state a claim.

21   Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as

22   facts supporting each." (collecting cases)).

23        Here, the SAC's allegations under the heading "Alter Ego Allegations" are, indeed, rote.

24   (*See* SAC ¶¶ 23–28.)  For instance, plaintiffs allege that each defendant "acted as an agent,

25   servant, employee, co-conspirator, alter-ego and/or joint venturer of the other Defendants[.]"  (*Id.*

26   ¶ 24.)  Plaintiffs further allege that "there exists, and at all times herein mentioned has existed, a

27   unity of interest and ownership between Defendants such that any separateness between them has

28   ceased to exist in that Defendant completely controlled, dominated, managed, and operated the

1  other Defendants to suit his convenience." (*Id.* ¶ 25.)  The next paragraph of the SAC appears to

2  be the closest to factual allegations:

3           Specifically, at all times relevant hereto, Defendants Bigelow, C.
        Bigelow, Green, Zakarian, Hansen, Zwahlen, and Raskin and Does
4       1-50 (1) controlled the business and affairs of Defendants Invigorate
        Healthcare, Inc., Invigorate Healthcare, LLC, Invigorate Healthcare
5       Management, LLC, LTC Management, SNF Payroll, SNF
        Management, Monte Vista Care Holdings, and Lamar Holdings, and
6       Does 1-50 including any and all of their affiliates; (2) commingled
        the funds and assets of the corporate entities, and diverted corporate
7       funds and assets for their own personal and the use of other separate
        skilled nursing facilities not involving Monte Vista Estates, LLC, nor
8       Lamar Estates, LLC; (3) disregarded legal formalities and failed to
        maintain arm's length relationships among the corporate entities; (4)
9       inadequately capitalized Defendants Invigorate Healthcare, Inc.,
        Invigorate Healthcare, LLC, Invigorate Healthcare Management,
10      LLC, LTC Management, SNF Payroll, SNF Management, Monte
        Vista Care Holdings, and Lamar Holdings, and Does 1-50 and; (5)
11      used the same office or business location and employed the same
        employees for all the corporate entities; (6) held themselves out as
12      personally liable for the debts of the corporate entities, including
        personal guaranties; (7) used the corporate entities as a mere shells,
13      instrumentalities or conduits for themselves and/or their individual
        businesses; (8) used the corporate entities to procure labor, services
14      or merchandise for another person or entities; (9) manipulated the
        assets and liabilities between the corporate entities so as to
15      concentrate the assets in one and the liabilities in another; (10) used
        corporate entities to conceal their ownership, management and
16      financial interests and/or personal business activities; and/or (11)
        used the corporate entities to shield against personal obligations, and
17      in particular the obligations as alleged in this Second Amended
        Complaint.
18

19  (*Id.* ¶ 26.)

20         Thus, as in *Unichappell*, in this case many of the SAC's allegations are boilerplate that

21  simply allege legal conclusions.  (SAC ¶¶ 24–28.)  Those allegations, standing alone, are

22  insufficient to support alter-ego liability.  The court will therefore ignore those allegations of the

23  SAC.  *See Unichappell Music, Inc.,* 2015 WL 546059, at *5; *see also Starr*, 652 F.3d. at 1216 (a

24  plaintiff must allege more than elements of cause of action to satisfy Rule 8).

25         One of the factors California courts have considered in evaluating the unity-of-ownership

26  element is whether there is "identical equitable ownership in the two entities[.]"  *Unichappell*,

27  2015 WL 546059, at *4 n.2.  Plaintiffs' SAC contains relatively detailed allegations regarding the

28  ownership structure of the SNF defendants and other defendants.  (SAC ¶¶ 7–21.)  The SNF

9

defendants are alleged to own equity in only one of the non-SNF defendants.  Specifically, Invigorate Healthcare Management, LLC is alleged to be part owned by LTC and Raskin.  (*Id.* ¶¶ 18, 21.)  Assuming for present purposes that such ownership is sufficient to find "identical ownership in the two entities," plaintiffs have adequately pleaded that only one of the unity-of-interest factors exists.  The cases upon which plaintiffs rely, however, stand for the proposition that "a plaintiff need only plead *two or three* of [the unity-of-interest factors] to withstand a motion to dismiss." *Id.* at *4 (emphasis added).  Plaintiffs allegation with respect to the presence of but a single factor is therefore insufficient to withstand a motion to dismiss, and the court will therefore dismiss plaintiffs' claims brought against the SNF defendants to the extent they depend on a theory of *alter-ego* liability.

b.    *Agency Liability*

The SNF defendants next argue that plaintiffs have failed to allege any agency liability because those allegations of the SAC, too, are generic.  (Doc. No. 41 at 14–15.)

"The essential characteristics of an agency relationship as laid out in the Restatement are as follows:  (1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*, 148 Cal. App. 4th 937, 964 (2007), *as modified on denial of reh'g* (Apr. 17, 2007).  "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kreiser v. Asset Mgmt. Grp., Inc.*, No. SACV 20-01794-JVS DFMx, 2021 WL 3579414, at *3 (C.D. Cal. Apr. 23, 2021) (citing *Imageline, Inc. v. CafePress.com, Inc.*, No. CV 10-9794 PSG MANx, 2011 WL 1322525, at *4 (C.D. Cal. Apr. 6, 2011)).  Moreover, "a plaintiff 'must allege facts demonstrating the principal's control over its agent.'" *Jones v. Aegis Wholesale Corp.*, No. 2:15-cv-01134-JAM-CKD, 2015 WL 9260837, at *2 (E.D. Cal. Dec. 18, 2015) (quoting *Imageline*, 2011 WL 1322525, at *4).

/////

10

1  Here, plaintiffs' allegations under the "agency allegations" heading are rote and do not

2  contain any factual details. (SAC ¶¶ 29–32.) For instance, plaintiff alleges that defendants "were

3  acting as the agents, employees, and/or representatives of each other, and were acting within the

4  course and scope of their agency and employment with the full knowledge, consent, permission,

5  authorization, and ratification, either express or implied, of each of the other Defendants in

6  performing the acts alleged in this Second Amended Complaint." (*Id.* ¶ 29.) These allegations

7  do not provide facts demonstrating control or otherwise support a reasonable inference that an

8  agency relationship existed. Accordingly, the court will also dismiss plaintiffs' claims brought

9  against the SNF defendants to the extent they depend on agency liability.

10  c.  *Conclusion as to Alter-Ego and Agency Liability*

11  All of plaintiffs' claims brought against SNF Management, LTC and Raskin depend on

12  theories of alter-ego or agency liability. Other than as part owners of defendant Invigorate

13  Healthcare Management, LLC or, with respect to SNF Management, the manager of SNF Payroll,

14  they are not alleged to have taken any individual actions. (*See* SAC.) These defendants are not

15  alleged to have made any individual statements or misrepresentations or otherwise taken

16  individual actions. Plaintiffs do not genuinely dispute that this is the case in their opposition to

17  the pending motion. (*See, e.g.,* Doc. No. 58 at 14 ("Second, as indicated above, SNF

18  Management is the manager and sole member of SNF Payroll, thus making it liable under the

19  alter ego theories above for SNF Payroll's actions and breach."), 21 (arguing that LTC and

20  Raskin are liable for fraudulent concealment as "part owner[s] of Invigorate Healthcare

21  Management, LLC" and that SNF Management is liable as a result of SNF Payroll's actions), 22

22  (similar arguments for negligent misrepresentation).) Accordingly, plaintiffs' claims brought

23  against SNF Management, LTC and Raskin will also be dismissed.

24  Below the court will address the pending motion to dismiss as to defendant SNF Payroll

25  except where discussion regarding the other SNF defendants is necessary.

26  2.  Breach of Contract

27  The SNF defendants argue that plaintiffs have not adequately alleged in the SAC that a

28  contract exists. (Doc. No. 41 at 16.) For California breach-of-contract claims, "it is absolutely

11

1   essential to plead the terms of the contract either *in haec verba* or according to legal effect."

2   *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 476 (N.D. Cal. 2020) (citation omitted);

3   *accord Twaite v. Allstate Ins. Co*., 216 Cal. App. 3d 239, 252 (1989) (same).  To plead legal

4   effect, a "plaintiff must allege the substance of its relevant terms.  This . . . requires a careful

5   analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions."

6   *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006).

7          Here, plaintiff has alleged that for each Payroll Agreement, SNF Payroll was paid a

8   certain sum and "was responsible for performing the services described in Annex A [to the

9   Payroll Agreement], including, but not limited to" various specific tasks.  (SAC ¶¶ 60–63, 65–

10  69.)  The SNF defendants, however, have not provided any authority supporting their contention

11  that this level of detail is insufficient, nor do they address the permissibility of pleading the legal

12  effect of a contract.  (Doc. Nos. 41 at 15–16; 60 at 6–7.)  It appears that plaintiffs have

13  comprehensively alleged the substance of the contracts' terms and have avoided legal conclusions

14  in doing so.  Accordingly, the court will deny the motion to dismiss as to plaintiffs' breach-of-

15  contract claim brought against defendant SNF Payroll.

16          3.          Breach of the Implied Covenant of Good Faith and Fair Dealing

17          The SNF defendants argue that this cause of action must be dismissed because (1) the

18  Payroll Agreements are not attached to the complaint and (2) the covenant is limited to the

19  express terms of the contract.  (Doc. No. 41 at 16–17.)

20          With respect to the first argument, the SNF defendants provide no authority establishing

21  that a contract must be attached to the complaint for an implied-covenant claim to survive a

22  motion to dismiss.  With respect to the second argument, the SNF defendants cite the decision in

23  *Racine & Laramie, Ltd. v. Dep't of Parks & Rec.*, 11 Cal. App. 4th 1026, 1031–32 (1992), in

24  which that court held that the covenant operates as a "*supplement* to the express contractual

25  covenants, to prevent a contracting party from engaging in conduct which (while not technically

26  transgressing the express covenants) frustrates the other party's rights to the benefits of the

27  contract."  However, other case law makes clear that a breach of the express terms is not required.

28  *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1244 (2013)

1   ("[B]reach of a specific provision of the contract is not necessary to a claim for breach of the

2   implied covenant of good faith and fair dealing.").  Accordingly, the court will deny this aspect of

3   the motion to dismiss.

4                    4.    Unjust Enrichment

5          The SNF defendants move to dismiss plaintiffs' claim for unjust enrichment brought

6   against defendants LTC and Raskin[3] because there are no specific allegations in plaintiffs' SAC

7   against any of the SNF defendants in support of this claim.  (Doc. No. 41 at 17–18.)  In this

8   regard, plaintiffs allege that "Defendants were enriched at the expense of Plaintiffs through the

9   payment in exchange for services to financially operate the Monte Vista Facility and the Lamar

10  Facility per consulting agreements."  (SAC ¶ 161.)  However, the SAC does not allege facts

11  establishing how LTC or Raskin were enriched by the Consulting Agreements.  Invigorate

12  Healthcare was a party to the Consulting Agreements, but plaintiffs allege Bigelow owned

13  Invigorate Healthcare.  (*Id*. ¶ 13.)  Plaintiffs also allege that LTC and Raskin were part owners in

14  Invigorate Healthcare Management, LLC without connecting the LLC and the parties to the

15  Consulting Agreements.  Accordingly, plaintiffs' claim for unjust enrichment brought against

16  LTC and Raskin is also subject to dismissal as inadequately pled.

17                   5.    Accounting

18         The SNF defendants argue that this claim should be dismissed because plaintiffs have not

19  alleged the existence of a fiduciary relationship or contractual right to an accounting.  (Doc. No.

20  41 at 18.)  According to the SNF defendants, "California law generally requires either pleading a

21  fiduciary relationship or a contractual right to an accounting for such a claim to be valid."  (*Id.*)

22  The argument advanced by the SNF defendants in this regard, however, is not supported or

23  persuasive.

24         "An action for an accounting has two elements:  (1) 'that a relationship exists between the

25  plaintiff and defendant that requires an accounting' and (2) 'that some balance is due the plaintiff

26  that can only be ascertained by an accounting.'"  *Sass v. Cohen*, 10 Cal. 5th 861, 869 (2020)

27  (quoting *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009)).  "[A] fiduciary relationship

28
───────────────
[3]  This claim was not brought by plaintiffs against SNF Payroll or SNF Management.

13

between the parties is not required to state a cause of action for accounting.  All that is required is that some relationship exists that requires an accounting." *Teselle*, 173 Cal. App. 4th at 179.  In reply, the SNF defendants argue that the contractual right must be a right to an accounting (Doc. No. 60 at 8–9), but the cases they rely upon do not stand for that proposition.  (*See id.* (citing *Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934), and *Los Defensores, Inc. v. Gomez*, 223 Cal. App. 4th 377, 401 (2014)).)  Neither party has provided the court with cases or citations to authority describing what types of relationship do or do not require accountings.  Because defendants bears the burden to support its motion to dismiss, this aspect of their motion to dismiss will be denied.

### 6.    Declaratory Relief

The SNF defendants argue that plaintiffs' claim for declaratory relief should be dismissed because, in part, the claim seeks declaratory relief concerning the Consulting Agreements to which they are not parties.  (Doc. No. 41 at 18–19.)  Plaintiffs counter that the SNF defendants misread the allegations of the SAC but do not clarify in what way, and they do not argue that, they seek declaratory relief concerning the Payroll Agreements.  (Doc. No. 58 at 19–20.)

As relevant to this aspect of the pending motion to dismiss, plaintiffs allege that:

> A dispute has arisen and an actual controversy now exists between Plaintiffs and Defendants concerning the respective rights, duties and obligations under the above-referenced agreements, including but not limited to the Monte Vista Estates' Agreement and Lamar Estates' Agreement, and of Defendants agreement to indemnify Plaintiff or to provide contribution in regard to a verdict or judgment, if any, rendered in this Action.

(SAC ¶ 174.)

This paragraph of the SAC expressly relates to the Consulting Agreements.  To the extent plaintiffs allege a right of contribution or indemnification, it appears those rights, too, stem from the Consulting Agreements.  (*Id.* ¶ 156 ("Under the express terms of the Monte Vista Estates' Agreement and Lamar Estates' Agreement, Defendants agreed to be responsible for all losses, and to indemnify, protect, defend and hold Plaintiffs harmless for all claims, demands, liability, and losses related thereto.").)  The SNF defendants, however, were not parties to the Consulting Agreements.  Thus, with respect to the SNF defendants and the Consulting Agreements, there is

14

1    nothing to declare.  Accordingly, this claim will be dismissed as to the SNF defendants.

2                7.          Fraudulent Concealment

3          SNF Defendants next seek to dismiss plaintiffs' fraudulent concealment claim because

4    under the allegations of the SAC, they argue, (1) they owed no duty to plaintiffs and (2) they did

5    not conceal anything from plaintiffs.  (Doc. No. 41 at 20–22.)  The court finds the first argument

6    convincing as to Dakavia and the second argument convincing as to the Facility Entities.

7          Plaintiffs have not alleged in their SAC that SNF Payroll owed any duty to Dakavia.  To

8    be liable for fraudulent concealment, a defendant must have "a legal duty to disclose the fact."

9    *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014) (citing Cal. Civ. Code

10   § 1710(3)).  That duty arises in four circumstances:  "(1) when the defendant is in a fiduciary

11   relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts

12   not known to the plaintiff; (3) when the defendant actively conceals a material fact from the

13   plaintiff; and (4) when the defendant makes partial representations but also suppresses some

14   material facts."  *Id.* (internal quotation marks and citation omitted); *accord In re Volkswagen*

15   *"Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 467 F. Supp. 3d 849, 860 (N.D. Cal.

16   2020) (same).  The final three circumstances "presuppose the existence of some other relationship

17   between the plaintiff and defendant in which a duty to disclose can arise."  *Hoffman*, 228 Cal.

18   App. 4th at 1186 (internal quotation marks and citation omitted).  "A relationship between the

19   parties is present if there is some sort of transaction between the parties."  *Id.*  Examples of such

20   relationships are "buyer and seller, employer and prospective employee, doctor and patient, or

21   parties entering into any kind of contractual agreement."  *Id.* (internal quotation marks and

22   citations omitted).  Here, however, there are no allegations that SNF Payroll and Dakavia were in

23   any sort of relationship—contractual or otherwise.  Accordingly, Dakavia has failed to state a

24   fraudulent concealment claim against SNF Payroll.

25         With respect to the Facility Entities, plaintiffs have not adequately alleged in their SAC

26   that SNF Payroll concealed or suppressed a material fact.  As relevant here, to plead a claim for

27   fraudulent concealment, a plaintiff must allege "concealment or suppression of a material fact

28   . . . ."  *Hoffman*, 228 Cal. App. 4th at 1186.  The SNF defendants argue plaintiffs have merely

1   alleged that Invigorate Healthcare and Bigelow owned and controlled the Facility Entities and

2   knew of their financial situation, and therefore the Facility Entities also knew of their financial

3   situation, notwithstanding any alleged misrepresentation.  (Doc. No. 41 at 21.)  Plaintiffs counter

4   that the SNF defendants misread the allegations of their SAC, but plaintiffs do not explain how.

5   (Doc. No. 58 at 21.)  In any event, plaintiffs do not dispute that Invigorate Healthcare's

6   knowledge can be imputed to the Facility Entities for these purposes.  Therefore, the Facility

7   Entities have failed to state a claim for fraudulent concealment against SNF Payroll.

8   Accordingly, the pending motion to dismiss will be granted as to that claim.

9              8.      Negligent Misrepresentation

10                 a.   *Rule 9(b)*

11         Under Federal Rule of Civil Procedure 9(b), "when fraud is alleged, 'a party must state

12   with particularity the circumstances constituting fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d

13   1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  Even when fraud is not an essential

14   element of the claim, "those allegations of a complaint which aver fraud are subject to Rule 9(b)'s

15   heightened pleading standard;" the remaining allegations may be pleaded under the standards set

16   forth in Rule 8(a)(2).  *Id.*  The allegations of fraud must "be specific enough to give defendants

17   notice of the particular misconduct so that they can defend against the charge and not just deny

18   that they have done anything wrong.  Averments of fraud must be accompanied by the who, what,

19   when, where, and how of the misconduct charged."  *Id*. (internal quotation marks and citations

20   omitted).  Fraudulent concealment and, at least under the allegations of the SAC here, negligent

21   misrepresentation both sound in fraud; therefore, claims thereunder must be pleaded with

22   particularity under Federal Rule of Civil Procedure 9(b).  *Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d

23   700, 712–13 (E.D. Cal. 2019) (citing cases).[4]

24         The SNF defendants contend that the allegations of plaintiffs' SAC do not satisfy Rule

25

26   [4]  There is some disagreement among courts about whether negligent misrepresentation must be
     pleaded with particularity.  *Zetz*, 398 F. Supp. 3d at 713 n.3.  The undersigned has concluded that
27   it must be, at least where, as here, the allegations sound in fraud and the plaintiffs do not contest
     that Rule 9(b) applies.  *Kerkorian v. Samsung Elecs. Am., Inc*., No. 1:18-cv-00870-DAD-SKO,
28   2019 WL 6918293, at *4 (E.D. Cal. Dec. 19, 2019).

1    9(b).  (Doc. No. 41 at 20.)  To the extent plaintiffs' allegations concern financial documents

2    provided to Dakavia, fraud is sufficiently alleged.  As relevant, plaintiffs allege that specified

3    defendants "negligently misrepresented and/or prepared financial documents for Plaintiffs,

4    including balance sheets, profits and loss statements, [and] costs reports, . . . [and] negligently

5    prepared and presented misleading and erroneous balance sheets and profit and loss statements to

6    Plaintiff Dakavia in 2018-2019 that understated Lamar Estates, LLC's losses by $209,926.19 and

7    Monte Vista Estates, LLC's losses by $140,925.14."  (SAC ¶¶ 134–35 (paragraph break

8    omitted).)  These allegations adequately specify the who (SNF Defendants and others), what

9    (misleading and misrepresented financial information), when (from 2018 through 2019 (*see also*

10   *id.* ¶ 125 (specifying the financial statements were made monthly)), and how (understating

11   losses).  Thus, the aforementioned allegations in paragraphs 134 and 135 of the SAC satisfy Rule

12   9(b) and the court will not dismiss plaintiffs' claim for negligent misrepresentation on this basis.[5]

13          However, plaintiffs' allegations that the SNF defendants negligently misrepresented that

14   they were abiding by their other contractual obligations do not comply with Rule 9(b).  Plaintiffs

15   do not allege with particularity what statements the SNF defendants made about the performance

16   of their duties.  Rather, they allege only that:

17
            Defendants made negligent misrepresentations of material fact when
18          they represented that they were providing bookkeeping, accounting,
            and administrative functions for the Monte Vista Facility and Lamar
19          Facility.   However, unbeknownst to Plaintiffs, Defendants
            negligently commingled United States Department of Housing and
20          Urban Development funds specified for Monte Vista Estates, LLC
            and Lamar Estates, LLC, with accounts held for other skilled nursing
21          facilities being run by Defendants.

22   (SAC ¶ 133.)

23          This does not provide sufficient specificity as is required.  Plaintiffs do not allege what

24   SNF Payroll is alleged to have stated, or to whom or when the statements were made.  Hence, the

25

26   _____
     [5]  In this situation, alleging the "where" is unnecessary in order to allow the moving defendants to
27   mount a defense.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2007) ("Rule 9(b)
     requires the identification of the circumstances constituting fraud so that the defendant can
28   prepare an adequate answer from the allegations" and not dismissing claim for failure to allege
     names of retail employees who made fraudulent statements).

1    allegations of the SAC do not provide the SNF defendants with sufficient information to prepare

2    an adequate answer to the allegations.  Accordingly, such allegations do not comply with Rule

3    9(b) and are subject to dismissal on that basis.

4                      b.      *Duty*

5            In moving to dismiss, the SNF defendants argue that SNF Payroll had no duties to

6    Dakavia.  (Doc. No. 41 at 22.)  California follows the approach set forth in the Restatement

7    (Second) of Torts § 552(2) ("§ 552(2)") to determine whether a defendant owes a plaintiff a duty

8    with respect to negligent misrepresentation.  *Apex Directional Drilling, LLC v. SHN Consulting*

9    *Eng'rs & Geologists, Inc.*, 119 F. Supp. 3d 1117, 1126 (N.D. Cal. 2015) (citing *Bily v. Arthur*

10   *Young & Co.*, 3 Cal. 4th 370, 409 (1992)).

11              Pursuant to the Restatement approach, to state a claim
                for negligent misrepresentation, a plaintiff must be a member of "a
12              specific class of persons" involved in a transaction that the defendant
                "supplier of information intends the information to influence." [*Bily*,
13              3 Cal. 4th] at 409.  This is "*an objective standard* that looks to the
                specific circumstances (e.g., supplier-client engagement and the
14              supplier's communications with the third party) to ascertain whether
                a supplier has undertaken to inform and guide a third party with
15              respect to *an identified transaction or type of transaction.*"  *Id.* at 410
                (emphasis in original).  Liability is "confined to cases in which the
16              supplier *manifests* an intent to supply the information for the *sort of*
                *use* in which the plaintiff's loss occurs." *Id.* at 409 (emphasis in
17              original).

18   *Id.* (parallel citations omitted).

19           Here, plaintiffs allege in their SAC that SNF Payroll agreed to supply certain financial

20   documents and information, but they do not allege that SNF Payroll manifested an intent to

21   supply the information to Dakavia.  Indeed, there are no allegations in the SAC that SNF Payroll

22   knew that the information was going to be supplied to Dakavia.  *See also* § 552, comment *h*,

23   illustration 10 (providing a hypothetical example similar to the instant situation); *Bily*, 3 Cal. 4th

24   at 393–94 (favorably citing illustration 10).  Accordingly, the court will dismiss plaintiffs'

25   negligent misrepresentation claims brought against the SNF defendants other than the claims by

26   the Facility Entities brought against SNF Payroll in paragraphs 134 and 135 of the SAC.

27                      9.      Negligence

28           The SNF defendants argue in one paragraph that they owed no duty to plaintiffs and

                                                    18

1   therefore plaintiffs' claim for negligence fails.  (Doc. No. 41 at 22–23.)  The SNF defendants

2   have inadequately briefed this issue.  In their SAC plaintiffs allege that the SNF defendants owed

3   a "duty to Plaintiffs in providing bookkeeping, accounting, and administrative functions."  (SAC

4   ¶ 142.)  The SNF defendants do not discuss why these allegations are insufficient, such as by

5   suggesting the type of duty plaintiffs must allege nor how that applies to this matter.  (*Id.*)  Nor

6   can they rely on their briefing with respect to the duty owed with respect to the claim of

7   negligent misrepresentation because it differs from the duty for a negligence claim.  *Apex*, 119 F.

8   Supp. 3d at 1112 ("Under California law, however, negligent misrepresentation 'is a separate and

9   distinct tort' from simple negligence and requires a unique duty of care analysis." (quoting *Bily*, 3

10  Cal. 4th at 407)).  Accordingly, SNF Payroll has not carried its burden in moving to dismiss this

11  claim, and the court will deny this aspect of the pending motion as to SNF Payroll.  *Pickell v.*

12  *Sands*, No. 2:12-cv-0373-GEB-DAD, 2012 WL 6047286, at *8 (E.D. Cal. Dec. 5, 2012), *report*

13  *and recommendation adopted*, 2013 WL 211101 (E.D. Cal. Jan. 18, 2013) (holding "the moving

14  party bears such a burden on a 12(b)(6) motion" and citing cases).  However, the SAC's theory of

15  liability as to the remaining SNF defendants rests on alter-ego or agency liability, and the claim as

16  to those defendants will accordingly be dismissed.  (*See* SAC ¶¶ 142–43.)

17          10.     Breach of Fiduciary Duty

18          The SNF defendants seek dismissal of this claim on the basis that they lacked any

19  fiduciary duties to plaintiffs.  (Doc. No. 41 at 23.)  Plaintiffs argue that the contractual

20  relationship between SNF Payroll and the Facility Entities created a fiduciary duty.  (Doc. No. 58

21  at 23.)

22          "Generally, the existence of a confidential relationship[6] is a question of fact for the jury

23  or the trial court.  Where a legally recognized fiduciary relationship exists, however, the law

24  infers a confidential relationship, i.e., it becomes a question of law for the court."  *Barbara A. v.*

25  *John G.*, 145 Cal. App. 3d 369, 383 (1983) (citations omitted).  When it becomes a question of

26  fact, California courts consider the following:

27  _____

28  6  "A fiduciary relation in law is ordinarily synonymous with a confidential relation."  *Rickel v.*
    *Schwinn Bicycle Co.*, 144 Cal. App. 3d 648, 654 (1983).

> "Fiduciary" and "confidential" relationships are relationships existing between parties to a transaction wherein one party is duty bound to act with the utmost good faith for the benefit of the other. Such a relationship ordinarily arises when one party reposes a confidence in the integrity of the other, and the other voluntarily accepts that confidence.  Before a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. . . .  The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party.

*Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 959–60 (2008) (internal quotation marks, citations and alterations omitted).

"Traditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal."  *Hodges v. Cnty. of Placer*, 41 Cal. App. 5th 537, 547 (2019) (citation omitted).  "Imposing a fiduciary duty any time a relationship of trust and confidence exists would result in the imposition of a fiduciary duty in nearly every contractual setting. Clearly, the law does not extend this far."  *Cork v. CC-Palo Alto, Inc.*, No. 5:14-CV-00750-EJD, 2021 WL 1561644, at *11 (N.D. Cal. Apr. 21, 2021) (internal quotation marks and citation omitted).

Plaintiffs argue that they have sufficiently alleged the existence of a fiduciary relationship with the SNF defendants by alleging that the SNF defendants had "fiduciary obligations in performing bookkeeping, accounting, and administrative functions" for the Facilities and Facility Entities.  (Doc. No. 58 at 23.)  Plaintiffs cite to paragraph 147 of the SAC—presumably, they meant paragraph 148—which reads as follows:

> Defendants . . . Raskin, . . . LTC Management, SNF Payroll, and SNF Management owed Plaintiffs fiduciary obligations in performing bookkeeping, accounting, and administrative functions for Monte Vista Estates, LLC and Lamar Estates, LLC and the Monte Vista Facility and Lamar Facility, including, but not limited to access to banking, medical records, financial and credit account information.  By reason of their fiduciary relationship, Defendants owed Plaintiffs the highest obligation of good faith, fair dealing, loyalty, and due care.

20

1   (SAC ¶ 148.)

2         These allegations, legal conclusions aside, *see Iqbal*, 556 U.S. at 664, are insufficient to

3   plead the existence of a fiduciary relationship.  Plaintiffs allege that SNF Payroll had obligations

4   and access to their information.  But plaintiffs have not alleged the type of trustful or confidential

5   relationship as required to establish a fiduciary relationship, nor do plaintiffs point the court to

6   any case law authority showing that parties have entered into a fiduciary relationship in similar

7   situations.  (*See* Doc. No. 58 at 23 (citing only one case to provide black-letter law).)  Moreover,

8   some courts have held that an accountant does not have a fiduciary relationship with its client,

9   absent additional circumstances.  *See, e.g., Richardson v. Reliance Nat. Indem. Co.*, No. C 99-

10  2952 CRB, 2000 WL 284211, at *10 (N.D. Cal. Mar. 9, 2000) ("The relationship between an

11  accountant and its client does not ordinarily give rise to a fiduciary obligation.").  Accordingly,

12  this claim will be dismissed.

13                    11.     Conversion

14        The SNF defendants argue that plaintiffs' claim for conversion fails because plaintiffs did

15  not own or have a right to possess the personal property at issue.  (Doc. No. 41 at 24.)  In this

16  regard, defendants argue that pursuant to the Consulting Agreements, Invigorate Healthcare had

17  exclusive control over the money allegedly converted.  (*Id.*)  Plaintiffs contend that they need not

18  allege sole ownership but instead entitlement to possession of the property.  (Doc. No. 58 at 24.)

19  Plaintiffs are correct that "absolute ownership of the property is not required; the plaintiff 'need

20  only allege it is entitled to immediate possession at the time of conversion.'"  *Erhart v. BofI*

21  *Holding, Inc.*, --- F. Supp. 3d ---, No. 15-cv-02287-BAS-NLS, 2020 WL 1550207, at *41 (S.D.

22  Cal. Mar. 31, 2020) (quoting *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997)).

23  However, plaintiffs have not so alleged in their SAC.  Plaintiffs do allege that federal funds

24  "specified for" the Facilities were illegally commingled by defendants with other funds (SAC

25  ¶¶ 53, 169), but do not allege that they owned or were entitled to immediate possession of those

26  funds.  Accordingly, plaintiffs have failed to state a cognizable claim for conversion.

27  /////

28  /////

1    　　　　　　　12.　　　　Attorneys' Fees

2    　　　　The SNF defendants seek to strike plaintiffs' prayer for relief for attorneys' fees on the

3    grounds that plaintiffs have failed to state a contractual or statutory basis for such fees.  (Doc. No.

4    41 at 25; *see also* SAC, Prayer for Relief ¶ 13.)  Motions to strike are considered under Federal

5    Rule of Civil Procedure 12(f), which is a different standard than that applicable to motions to

6    dismiss brought under Rule 12(b)(6).  *See Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132,

7    1137–38 (E.D. Cal. 2010) (setting forth different standards for the two motions); *Platte Anchor*

8    *Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057–58 (N.D. Cal. 2004) (considering motion to

9    strike a prayer for attorneys' fees and reviewing California law concerning whether attorneys'

10   fees are recoverable as consequential damages).  However, the SNF defendants do not even

11   provide the court with the relevant legal standards—much less, apply them—in their brief, 62-

12   word motion to strike.  This aspect of the motion will be denied due to their failure to do so.

13   　　　　　　　13.　　　　Leave to Amend

14   　　　　Plaintiffs request that in the event any aspect of the pending motion to dismiss is granted

15   that the court grant them further leave to amend without providing a specific rationale for why the

16   granting of such leave is appropriate here.  (Doc. No. 58 at 25.)  Although the SNF defendants

17   request that they be dismissed from this action with prejudice (and thus, without leave to amend

18   as to them) (Doc. No. 41 at 25), their arguments as to leave to amend or dismissal with prejudice

19   are sparse, specific to several individual claims, and scattered throughout their pending motion.

20   (*See id.* at 14, 18, 19, 23.)

21   　　　　Although "Rule 15(a) is very liberal and leave to amend shall be freely given when justice

22   so requires ... a district court need not grant leave to amend where the amendment: (1) prejudices

23   the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is

24   futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)

25   (internal quotation marks and citations omitted).  Repeated failures to cure deficiencies by

26   amendment can also justify withholding leave to amend.  *See Sonoma Cty. Ass'n of Retired*

27   *Employees v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).

28   /////

1    "[I]t is the consideration of prejudice to the opposing party that carries the greatest

2    weight"—prejudice being the "touchstone of the inquiry under Rule 15(a)"—but the opposing

3    party bears the burden of demonstrating prejudice. *Eminence Capital, LLC v. Aspeon, Inc.*, 316

4    F.3d 1048, 1052 (9th Cir. 2003) (internal quotation marks and citations omitted). "Leave to

5    amend may [also] be denied if the proposed amendment is futile or would be subject to

6    dismissal," *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (citation

7    omitted), but only if there are "'no set of facts [that] can be proved under the amendment to the

8    pleadings that would constitute a valid and sufficient claim or defense.'" *Missouri ex rel. Koster*

9    *v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted). "Absent prejudice, or a strong

10   showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor

11   of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052.

12        Here, the court cannot say with certainty that further amendment would be futile. It is

13   possible that plaintiffs may be able to allege additional facts establishing alter-ego or agency

14   liability. Moreover, the SNF defendants have not established any true prejudice stemming from

15   the granting of leave to amend beyond having to defend against this lawsuit, and this is the first

16   time the court has granted leave to amend the substance of the complaint. Accordingly, the court

17   will grant plaintiffs leave to amend. Moreover, given plaintiffs' counsel's statements that they

18   require additional discovery and have been hindered in their access to relevant documents (Doc.

19   No. 58-1), and the length of time since the SNF defendants filed the pending motion to dismiss,

20   the court will leave to the assigned magistrate judge to determine the proper deadline for the

21   filing of any amended complaint in a scheduling or other order.

22   **B.     Motion for Sanctions**

23        Defendants argue, in essence, that plaintiffs' claims against them are so weak that the

24   court should impose Rule 11 sanctions on plaintiffs. (Doc. No. 57.)[7] Most of the sanctions

25   /////

26

27   _____
     [7] Defendants' motion for the award of sanctions is directed at plaintiffs' first amended complaint

28   (Doc. No. 38 ("FAC")), not the SAC. However, due to the similarities between the two, the
     court's analysis is the same whether it applies the motion for sanctions to the FAC or the SAC.

motion merely rehashes arguments about issues relating to agency and alter ego set forth in their motion to dismiss:  that plaintiffs' allegations lack a factual and legal basis.  (*Compare id. with* Doc. No. 41.)

The parties briefed this matter extensively, but for the sake of judicial efficiency, the court will dispose of the arguments quickly.[8]  Defendants have failed to establish that the claims brought against them were so legally or factually baseless as to be sanctionable.  *See In re Keegan*, 78 F.3d at 437 ("Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.").  Plaintiffs' agency and alter-ego allegations have been found to be legally insufficient because plaintiffs only alleged one (at most) of the relevant factors (ownership), but merely failing to state a claim does not justify the imposition of sanctions.  Indeed, defendants' arguments would render a great many complaints dismissed by the undersigned under Rule 12(b)(6) potentially sanctionable.  Additionally, despite defense counsel averring that plaintiffs' counsel "only could point to rumor and innuendo" (Doc. No. 57-1 ¶ 5) to back up their factual premises, plaintiffs' counsel established some factual basis for believing the SAC's allegations were correct and that they were not provided with sufficient reason to remove allegations that defendants found offensive.  (*See* Doc. No. 59-1 (declaration of plaintiffs' counsel).)  Accordingly, the court will deny defendants' motion for imposition of sanctions.

Plaintiffs hint that they believe the motion for sanctions is itself sanctionable.  (*See* Doc. No. 59 at 15–16.)  Because that suggestion does not amount to a properly noticed Rule 11 motion, the court will not treat it as one.  However, this obviously overburdened court cautions counsel

/////

---

[8]  "While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources.   Rule 11(c)(6) requires only that a district court explain the basis of its order when the court imposes a sanction, not when it denies sanctions." *de Borja v. Razon*, 336 F.R.D. 620, 649 (D. Or. 2020) (quoting *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391, 392 n.9 (3d Cir. 2016) (citation omitted); *accord* Fed. R. Civ. P. 11, Advisory Committee Note (1993) ("[T]he court should not ordinarily have to explain its denial of a motion for sanctions."); 27A Tracy Bateman, et al., *Fed. Proc., L. Ed.* § 62:786 ("The court should not ordinarily explain its denial of a motion for sanctions" but noting existence of contrary rule in other circuits).

1   for both parties that it will not look favorably on unfounded future motions for the imposition of

2   sanctions.

3                                       **CONCLUSION**

4          Accordingly,

5          1.    The SNF defendants' motion to dismiss (Doc. No. 41), is granted in part and denied

6                in part, as delineated and explained above;

7          2.    Plaintiffs are granted leave to file a third amended complaint within a timeframe to be

8                set by the assigned magistrate judge, with the matter being referred to the magistrate

9                judge for scheduling;

10         3.    The SNF defendants' motion for the imposition of sanctions (Doc. No. 57) is denied;

11               and

12         4.    The Clerk of the Court is directed to now reassign this case to U.S. District Judge

13               Jennifer L. Thurston and to remove the "NONE" designation.

14   IT IS SO ORDERED.

15      Dated:   __**January 10, 2022**__              _____

16                                             UNITED STATES DISTRICT JUDGE

25